MARY H. LUSE v. SAMUEL JONES ET AL.

1. The price of an article, sold by a regular dealer in the ordinary course of trade, may be shown as one element in determining its value.
2. When personal property, in the actual use of the owner, is injured or taken by a trespasser, so that the owner is deprived of the use of it, the special damage necessarily and proximately attendant upon such

privation, may, if alleged in the pleadings, be proven, to augment the damages beyond the mere value of the thing taken, or the diminution in value of the thing injured.

3. The proceeds of the separate business of a married woman, carried on by her for her own benefit, with her husband's consent, are not liable to seizure by her husband's creditors.

4. When the acts of persons are evidence in a cause, their cotemporaneous writings and declarations which give character to those acts are also evidence, as part of the *res gestæ.*

5. One who has a special property in chattels, (*e. g.*, a mortgagor,) and the actual possession thereof, may maintain trespass against a stranger who takes them, and recover their full value.

On writ of error to the Supreme Court.

For the plaintiffs in error, *J. G. Shipman.*

For the defendant in error, *H. C. Pitney.*

The opinion of the court was delivered by

DIXON, J.  The plaintiff below, Mary H. Luse, brought an action of trespass, claiming that in August, 1876, she was engaged in keeping a boarding-house, in Morristown, and that the defendants wrongfully entered her house, removed her furniture and sold it, and thus interfered with her business, and she demanded damages both for her goods so taken and her business so injured.  The defendants insisted that the furniture and business belonged to her husband, and that Hoffman, one of the defendants, being the sheriff of Morris county, and having a writ of *fi. fa. de bon.* against the husband at the suit of Jones, the other defendant, their acts in the premises were but in execution of that writ, and were therefore lawful. So an issue of property was made, and upon the trial at the Morris Circuit, exceptions were taken on behalf of the defendants, which are now brought before this court by writ of error.

The first exception insisted upon is, that the plaintiff was allowed to prove the cost of a bedstead, as tending to show its value.  This cost was the price at which a regular dealer in such articles had sold it when new, in the ordinary course of

trade. A sale so made was evidence of the market value of the thing when new, and the value of such goods when worn can scarcely be ascertained, except by reference to the former price and the extent of depreciation. Of course, the cost alone would not be a just criterion of the present value, but it would constitute one element in such a criterion, and the attention of the jury in this case was clearly directed to the importance which it deserved to have.

The next three exceptions are based upon the permission granted the plaintiff to prove the inconvenience which she suffered in her business for want of her furniture, both by reason of her having boarders in the house and through her being obliged to turn away applicants for board before she could, with proper diligence, re-furnish her house, by which she lost much of the benefits of the summer season. The objection made is, that such inconvenience and loss are not proper elements of damages. The opposite, however, is the legal rule in this class of cases. The true principle is, that when personal property, in the actual use of the owner, is injured or taken by a trespasser, so that the owner is deprived of the use of it, the special damage necessarily and proximately attendant upon such privation, may, if alleged in the pleadings, be proven to augment the damages beyond the mere value of the thing taken, or the diminution in value of the thing injured. Such a rule is only a specification under the general rule that the plaintiff is entitled to compensation for the wrong done him. In *Post* v. *Munn*, 1 *South.* 61, the action was trespass for breaking down a net while it was stretched for fishing, and the plaintiff produced evidence as to the run of shad in the river at the time, with a view to recovering more than the cost of repairing the net. Kirkpatrick, C. J., said, " In actions of trespass, the damages are not always to be measured by the actual cost of the thing injured or destroyed. The whole loss sustained is to be taken into view, and this depends upon its uses, its profits, the particular season or time or occasion of the injury done, and the benefits or advantages lost thereby." And Southard, J., said, " The

mere tearing of the net is but a small portion of the damage sustained. The greater part of the injury arises from losing the use of the net, and the value of that use depends upon the run of the shad." In *Woolley* v. *Carter*, 2 *Halst.* 85, the same Chief Justice remarked, " In an action of trespass for breaking the close, and taking and carrying away the goods and chattels, if the jury find for the plaintiff, they must find the value of the goods. *    * They must, besides, add to the value of the goods the incidental damages, because the value is not always a compensation for the injury : as if one take from his neighbor the beasts of the plough in seed-time, or the implements of husbandry in harvest, whereby he is prevented from sowing his seed or reaping his corn, it is obvious that the value of the thing taken is the smallest part of the injury."

A similar doctrine is announced in *Bodley* v. *Reynolds*, 8 *Q. B.* 779, and *France* v. *Gaudet*, *L. R.*, 6 *Q. B.* 199.

Within the limits of the principle just stated, the testimony in this case was confined. The plaintiff's use of the furniture was evident. The natural and immediate effect of its removal was that her household was disturbed, and that others, seeking accommodation there, must be refused ; and this effect would necessarily continue until, by reasonable diligence, new furniture could be obtained. There was no error in permitting such facts to be given in evidence.

The next exception was, because the plaintiff was allowed to prove the arrangement between herself and her husband, as to the proceeds of the boarding-house business, which she claimed to be carrying on separately, for her own benefit, with his consent. It is difficult to see how more direct evidence of the husband's consent could be adduced, than by showing his actual arrangement that she might conduct the business separately, and take the proceeds to her own use ; and the propriety of establishing such consent, and its legal effect in preventing the claims of his creditors upon such proceeds, are conclusively settled by the case of *Peterson et ux.* v. *Mulford*, 7 *Vroom* 481. Since the Married Women's Act of March 17th, 1874, (*Rev.*, *p.* 468, § 4,) the husband's consent has not

been requisite, but the business in controversy was largely or wholly prior to that act.

Exception was also taken to the permission accorded to the plaintiff to produce in evidence the bills which, at the time of purchase, she had received from the several merchants of whom she bought the furniture in controversy.    These bills, it is urged, were but hearsay—as the declarations of the merchants—and were also objectionable, as being testimony manufactured through the plaintiff's own acts.    This is a misapprehension; they were not within the class of hearsay testimony. They constituted lawful evidence as part of the *res gestæ*, because they were cotemporaneous with, and gave character to the transfer of the goods in question from the possession of the former owners, the merchants, to that of the plaintiff, and tended to show that such transfer was not a loan, or a lease, or a pledge, but a sale, and to her, not as agent, but in her own right.    That they were the result of the plaintiff's own conduct, is true; but if that rendered them incompetent proof in her favor, it would, I think, be impossible to prove a great many of the rights of property we enjoy; for there are but few which we have not acquired by our own voluntary acts. The same observations apply to the receipts upon the bills. While those receipts might not be evidence of the fact of payment, yet the plaintiff having sworn to such payments, the receipts delivered to her by the merchants thereupon, were evidence to characterize the transaction, by showing, just as the oral declarations of the parties at the time would show, that the money was given and received in satisfaction for the goods. 1 *Phil. on Ev.* 185.

To the same category must be referred the statements made by applicants for board, as to the time for which they desired to engage accommodations.    It being lawful to show the applications, these statements, as constituent elements thereof, were admissible.

Exception was also taken to the decision of the justice in overruling the question put to the plaintiff on her cross-examination by the defendant's counsel—" You and Mr. Luse gave

a chattel mortgage on the property, didn't you?" on the ground that the instrument or its record was the best evidence. This ruling was probably erroneous, as the question might be allowable to identify the parties and the property. But no harm was done, for, subsequently, the mortgage was put in evidence, and the identity of both parties and property was admitted.

The motion to non-suit the plaintiff was correctly refused, for she had adduced testimony requiring the decision of the jury as to every fact necessary for her recovery.

The only other exceptions having sufficient substance to call for special mention, are those to the charge of the justice, and his refusal to charge, which present the question whether a mortgagor of chattels who, for his own benefit, and with the consent of the mortgagee, retains the possession and use after condition broken, can recover in trespass the full value of the goods against a stranger who seizes and converts the same.

Under these circumstances, the mortgagee is said to be regarded at law as the general owner of the property. *Hall* v. *Snowhill*, 2 *Green* 8 ; *Miller* ads. *Pancoast*, 5 *Dutcher* 250.

The mortgagor, however, has a special property in the goods, both because he has a right to make them wholly his own, by payment of the debt, and because, holding them for his own benefit, he is answerable to the mortgagee for them. *Bac. Abr.*, " *Trespass*," C, 19.

The principles which regulate the action of trespass for an injury to chattels so owned, are stated with precision by Sergeant Sayer, under the title just quoted, (" *Trespass*," C, 33, 34,) as follows : " It is, upon the whole, clear that both the person in whom the general property is, and the person in whom the special property is, may maintain an action of trespass for the taking or injury of a personal chattel by a stranger, while it was in the actual possession of the latter ; but if either of these persons have recovered in such action, this shall oust the other of his right of action. Otherwise the trespasser would be liable to make a second satisfaction for the same

injury." These principles are well settled. *Sedg. on Dam.* 506; 1 *Add. on Torts*, ch. 7, § 3, ¶ 524; *Browning* v. *Skillman*, 4 *Zab.* 351; *Outcalt* v. *Durling*, 1 *Dutcher* 443; *Adams* v. *O'Connor*, 100 *Mass.* 515; *Faulkner* v. *Brown*, 13 *Wend.* 63; *White* v. *Webb*, 15 *Conn.* 302.

From the rule that a recovery by one of such owners is a legal bar to an action by the other, it follows that either, suing, must recover as damages all that both are entitled to in the thing—that is, its full value.

The cases which the defendant's counsel cites to the contrary, are actions, not between one of the owners and a stranger, but between the several owners, in which the damages are properly limited by the value of the plaintiff's interest. *Brierly* v. *Kindall*, 17 *Q. B.* 937; *Goulet* v. *Asseler*, 22 *N. Y.* 225; *Manning* v. *Monaghan*, 28 *N. Y.* 585.

The justice, therefore, rightly charged that the plaintiff might, notwithstanding the mortgages, recover the full value of the goods taken from her.

There is no injurious error upon the record, and the judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, KNAPP, SCUDDER, VAN SYCKEL, WOODHULL, CLEMENT, DODD, GREEN, LILLY—12.

*For reversal*—None.