Decided June 3, 1895.

# MILLER *v.* HIRSCHBERG.

[40 Pac. 506.]

1. PLEADING — TORT — CONTRACT.— A recovery cannot be had on a complaint alleging a cause of action sounding in tort upon proof of the breach of a contract, express on implied.

2. TROVER BY WAREHOUSEMAN — SUFFICIENCY OF COMPLAINT.— A complaint alleging that plaintiff was a warehouseman, and as such was the bailee and in possession of large quantities of wheat; that defendant represented that he had purchased from the bailors a certain large amount of such wheat, and demanded and received such quantity from plaintiff; that, in fact, defendant had purchased a much less quantity than he received; and had wrongfully converted the difference to his own use; and had refused to return it or pay for it on demand, is sufficient, at least after verdict, to sustain an action for trover.

3. ELECTION OF REMEDIES — TORT OR CONTRACT.— In some cases a plaintiff may waive a tort and sue in contract, but the election lies with him, and the defendant must meet him in the form of action chosen.

4. INFERENCES IN FAVOR OF JUDGMENT.— After judgment every inference will be indulged in support of the proceedings of the court below.

5. TROVER BY WAREHOUSEMAN.— A warehouseman who by mistake surrenders to one depositing grain in his warehouse a greater quantity than he is entitled to may maintain an action of trover to recover the excess or its value, although no fraud or misrepresentation was used to induce the delivery, upon refusal of a demand for its return.

6. PLEADING ILLEGALITY AS A DEFENSE.— The defense of illegality must be pleaded to entitle the defendant to such defense, although the failure to do so will not compel the court to entertain the action where such illegality appears: *Ah Doon* v. *Smith*, 25 Or. 89, cited and approved.

7. PLEADING DEFENSE OF ILLEGALITY — PUBLIC POLICY.— Where a bailee, by mistake, delivers to another wheat belonging to third persons, and, upon the transferee's refusal to return the same, sues him for wrongful conversion, the court will not, on its own motion, for reasons of public policy, dismiss the action on the ground that plaintiff violated Hill's Code, § 4204, making it a crime for a warehouseman to remove from his custody any grain for which a receipt has been given, without the written consent of the owner. If defendant intended to rely on such a defense he should have pleaded it.

8. DEFECTS IN PLEADING AIDED BY VERDICT.— Where defendant pleaded in bar a settlement between the parties, and the referee found that such settlement did not include the claim in controversy, the objection that the reply was defective, in not setting out facts to falsify the settlement, can

not be taken for the first time after verdict. In such cases the pleading is entitled to every reasonable influence in its favor: *Aiken* v. *Coolidge*, 12 Or. 244; *Andros* v. *Childers*, 14 Or. 447; *Gschwander* v. *Cort*, 19 Or. 515, cited and approved.

APPEAL from Polk: GEORGE H. BURNETT, Judge.

This is an action in trover originally commenced by L. Bentley against H. Hirschberg to recover the value of ten thousand two hundred and eleven bushels of wheat, which it is alleged Hirschberg wrongfully converted to his own use. After the commencement of the action Bentley made an assignment, and thereupon Miller, as assignee, was duly substituted as plaintiff, and the action thereafter proceeded in his name. The amended complaint alleges, substantially, that during the years eighteen hundred and eighty-seven, eighteen hundred and eighty-eight, eighteen hundred and eighty-nine, and eighteen hundred and ninety, Bentley was engaged in a general warehouse and storage business for hire in the town of Independence, and during such time received from divers and sundry owners large quantities of wheat on storage, for which he issued receipts, wherein it was stipulated that such wheat should be delivered upon the order of the owner or owners thereof on board the cars or boats; that during said years, the defendant, with intent to defraud, represented to Bentley that he was the owner of and had purchased large quantities of wheat in storage, as aforesaid, and, well knowing such representations to be false and fraudulent, ordered and directed the delivery and shipment of wheat to and for him at divers times, aggregating eighty-four thousand bushels; that, relying upon said false and fraudulent statements and representations, and being deceived and misled thereby, Bentley, as such warehouseman, shipped for and delivered to the defendant all the eighty-four thousand bushels of wheat so ordered, an itemized statement of

the several shipments thereof being attached to and made a part of the complaint; that in truth and in fact, during said years, defendant was the owner and purchaser of not more than seventy-three thousand bushels, but, being deceived and misled by his false and fraudulent representations, Bentley shipped for and delivered to him ten thousand two hundred and eleven bushels of wheat, of the value of nine thousand one hundred and eighty-seven dollars, in excess of the amount owned by him, or of which he was entitled to the possession, which he converted to his own use, and neglects and refuses to account for or redeliver, although lawful demand therefor has been made; that by reason of said wrongful conversion and wrongful acts of defendant, Bentley was damaged in the sum of nine thousand one hundred and thirty-seven dollars, the value of the wheat so converted by him.

The answer, after denying all the material allegations of the complaint, affirmatively alleges: That during the time set forth and mentioned in the complaint the defendant was the owner and purchaser of wheat on storage in the Bentley warehouse amounting in the aggregate to ninety-nine thousand two hundred and ninety-nine bushels, of which an itemized statement is annexed and made a part of the answer; that at different times during the dates mentioned in the complaint Bentley, at the request of defendant, shipped and delivered to divers persons eighty-four thousand bushels, but at the same time this defendant had stored in the warehouse of one I. Claggett, at Independence, more than thirteen thousand six hundred and ninety two bushels, and on or about the —— day of ——, eighteen hundred and eighty-eight, at the request of said Bentley, and for his benefit, Claggett, with this defendant's consent, shipped for and delivered to him nine thousand eight hundred and ninety-

six bushels of wheat, and subsequently George Brey, who was then the owner or in possession of the Claggett warehouse, shipped and delivered to him three thousand seven hundred and ninety-six bushels then owned by defendant, and in said warehouse, amounting in the aggregate to thirteen thousand six hundred and ninety-two bushels; and it was then and there agreed and understood by and between Bentley and defendant that said wheat should be credited upon and deducted from the eighty-four thousand bushels shipped by Bentley from his warehouse. For a further and separate defense, defendant alleged: That at the close of the shipping season of each year Bentley and defendant had a full, fair, and complete settlement and accounting of and concerning all accounts and matters of business between them up to the date of such accounting and settlement, including storage and shipping accounts, and finally, on the first day of April, eighteen hundred and ninety-one, they had such a settlement and accounting of and concerning all matters of business between them prior to that date, and it was then found that there was then due and owing from Bentley to defendant, on account of wheat still stored in his warehouse, owned by defendant and not shipped, the sum of forty-six dollars and eighteen cents, for which he then and there gave the defendant his promissory note.

The reply denies the allegations of the answer, except that it alleges that they had a settlement of some items of their affairs on the first day of April, eighteen hundred and ninety-one, including a shipment of wheat to McMinnville and to Allen and Lewis, some accounts of storage, and some items of bank account, repairs on warehouse, and one item of oats, but that it did not in any manner or form include the claims upon which this action is instituted, or have any reference thereto, or any other matters of business between them.

The cause was referred to W. S. McFadden, Esq., to take the testimony and report an accounting. Upon the coming in of his report, which was in favor of the plain- tiff, and in accordance with the allegations of the com- plaint, the plaintiff moved for a confirmation thereof, while the defendant moved for judgment notwithstand- ing the finding, and also to set aside the report. Upon the hearing of these motions the findings of the referee were modified in some particulars, and the facts, as finally found and confirmed by the trial court, are as follows: "*First*—That J. E. Miller is the assignee of the estate of L. Bentley, insolvent, and has been duly substituted for L. Bentley, plaintiff, and is the duly acting, consti- tuted, and qualified assignee of the estate of L. Bentley, insolvent. *Second*—That during the years eighteen hun- dred and eighty-seven, eighteen hundred and eighty- eight, eighteen hundred and eighty-nine, and eighteen hundred and ninety, the said L. Bentley was engaged in the warehouse and storage business, as a warehouse- man, in the town of Independence, Polk County, Ore- gon, and, as such warehouseman, received for storage from the owners thereof, large amounts of wheat, for which he charged and received from each person storing with him four cents per bushel for the first year, and one and one tenth cents per bushel for each year thereafter, that such wheat was kept on storage; and the said L. Bentley issued to the owner of such wheat receipts for the amount thereof, such wheat to be delivered by said Bentley upon the order of the owner or owners of the same on board of boat or cars, the purchaser thereof to pay for sacks containing such wheat; and the said L. Bentley became and was the lawful bailee of such wheat. *Third*—That during said years, eighteen hun- dred and eighty-seven, eighteen hundred and eighty- eight, eighteen hundred and eighty-nine, and eighteen

hundred and ninety, the said defendant was engaged in business, and purchased wheat of a number of persons having wheat in storage with the plaintiff in his warehouse. *Fourth* — That during the years last aforesaid the defendant ordered, directed, and requested said L. Bentley, at divers times, to ship and deliver to him, the said defendant, sundry amounts of wheat, aggregating in all eighty-four thousand and seven bushels, and, in pursuance of said order, request, and direction of the said defendant, the said L. Bentley did, during the said years, ship and deliver to the said defendant the said amount of eighty-four thousand and seven bushels of wheat, at the times and in the amounts as follows (here follows a statement of the dates and amounts of the respective shipments). *Fifth* — There is no proof that the defendant made any false representation to the said L. Bentley prior to the delivery of any of said wheat as to the amount of wheat owned by the said defendant in the warehouse of said L. Bentley, and therefore the court finds that the allegations of fraud in the plaintiff's complaint are not sustained by the testimony. *Sixth* — That in truth and in fact, during said years defendant was the purchaser and owner, and entitled to the possession, of no larger or greater amount of such wheat in storage in the warehouse of the said L. Bentley, than seventy-three thousand seven hundred and ninety-five bushels, which defendant well knew at the time and dates he received and shipped the said eighty-four thousand and seven bushels of wheat mentioned in finding of fact fifth. An itemized statement of the said seventy-three thousand seven hundred and ninety-five bushels of wheat is hereto attached and made a part of this finding. *Seventh* — That the said L. Bentley, in pursuance of the order, request, and direction of said defendant, delivered to the defendant, during the time aforesaid, ten thousand two hundred

and eleven bushels of wheat in excess of the amount owned by the defendant and in charge of said L. Bentley; that ten thousand and three bushels of said wheat was reasonably worth seventy-seven cents per bushel, and, in the aggregate, the sum of seven thousand seven hundred and three dollars ($7,703); that two hundred and seven bushels of said excess of wheat was of the reasonable value of eighty-six cents per bushel, or of the aggregate value of one hundred and seventy-eight dollars; that the total value of said excess of wheat, to wit, ten thousand two hundred and eleven bushels, was and is seven thousand eight hundred and eighty-one dollars ($7,881), and that the defendant has not paid the same or any part thereof. *Eighth*—That the said L. Bentley, at all times since the storage of the wheat hereinbefore mentioned, and until the delivery thereof to the defendant, was lawfully entitled to the possession of the whole thereof. *Ninth*—That prior to the commencement of this action, to wit, on the —— day of March, eighteen hundred and ninety-one, the said L. Bentley duly demanded said wheat of the defendant. *Tenth*—That it is not true that on or about the —— day of ——, eighteen hundred and eighty-eight, the defendant had stored in the warehouse of I. Claggett, at Independence, Oregon, a large amount of wheat, or more than thirteen thousand six hundred and ninety-two bushels of wheat; that it is not true that at the request of said plaintiff, or for his benefit, the said Claggett, with the defendant's consent, shipped for or delivered to the plaintiff, on board cars at said place, nine thousand eight hundred and ninety-six bushels of wheat, or any wheat; that it is not true that the said nine thousand eight hundred and ninety-six bushels was shipped for or delivered to the said plaintiff about October, eighteen hundred and eighty-nine, at said place; and the following allegations

in defendant's answer: 'George Brey, who shipped and delivered to plaintiff aboard cars at said place, three thousand seven hundred and ninety-five bushels of wheat then owned in said warehouse by this defendant, at the request and for the benefit of plaintiff, with this defendant's consent, said two several amounts of wheat so shipped amounting in the aggregate to thirteen thousand six hundred and ninety-two bushels of wheat, and it was then and there agreed and understood by and between plaintiff and defendant that the said thirteen thousand six hundred and ninety-two bushels of wheat so shipped from said Claggett or Brey warehouse should be credited upon and deducted from the said eighty-four thousand and seven bushels of wheat so shipped by plaintiff from his warehouse, leaving charged to this defendant, of said wheat so shipped, only seventy thousand three hundred and fifteen bushels of such wheat so shipped,' are not sustained by the evidence in this cause.     *Eleventh*—That plaintiff and defendant had settlements between them on December twenty-eighth, eighteen hundred and eighty-eight; on March seventh, eighteen hundred and ninety; on April fifteenth, eighteen hundred and ninety, and on April first, eighteen hundred and ninety-one; but that neither the said ten thousand and three bushels of wheat, nor the said two hundred and seven bushels of wheat, were included in either of said settlements, nor in any other settlement under the testimony." As conclusions of law the court found that plaintiff is entitled to recover of and from the said defendant the sum of seven thousand eight hundred and eighty-one dollars, together with the costs and disbursements of this action to be taxed. Judgment was rendered in accordance with these findings, and defendant appeals.

AFFIRMED.

27 OR.—68.

For appellant there were oral arguments by *Messrs.* *Reuben S. Strahan, Martin L. Pipes,* and *J. J. Daly,* with briefs by *Whalley, Strahan and Pipes* urging these points.

We submit that the allegations of the complaint are too vague and indefinite, the statement that plaintiff had "large quantities" of wheat at "divers times" has no explicit meaning, and is no representation of quantity: *Specht* v. *Allen,* 12 Or. 117; *Dawson* v. *Graham,* 48 Iowa, 378; *Holbrook* v. *Connor,* 60 Me. 578 (11 Am. Rep. 212); *Rolf* v. *Russell,* 5 Or. 404; Kerr on Fraud and Mistake, 82.

The cause of action, whether it be in tort or on contract, is based on a violation of sections 4201–4207, Hill's Code. It appears that Bentley was a warehouseman, that he had the wheat in question on storage, and had issued receipts for it, that he delivered the wheat to defendant without requiring the return of the warehouse receipts, and without the written or oral consent of the holders of them. Bentley cannot prove his case without at the same time proving a direct violation of the statute. In such a case the plaintiff cannot recover: *Wilson* v. *Spencer,* 10 Am. Dec. 492; *Linn* v. *State Bank of Illinois,* 1 Scam. 87; *Ayer* v. *Hutchins,* 4 Mass. 370 (3 Am. Dec. 232); *Cusack* v. *White,* 2 Mill, 279 (12 Am. Dec. 389); *Gulick* v. *Ward,* 5 Halst. 87 (18 Am. Dec. 389); *Seidenbender* v. *Charles,* 4 Serg. and R. 151 (8 Am. Dec. 682); *Hibernia Trust Company* v. *Henderson,* 8 Serg. and R. 219 (11 Am. Dec. 593); *Gray* v. *Roberts,* 2 A. K. Marshall, 208 (12 Am. Dec. 383); *Smith* v. *Arnold,* 106 Mass. 269; *Puckett* v. *Alexander,* 102 N. C. 95; *Milne* v. *Davidson,* 5 Martin (N. S.,) 409 (16 Am. Dec. 189); *Plumer* v. *Smith,* 5 N. H. 553 (22 Am. Dec. 478); *Mitchell* v. *Smith,* 1 Binn. 110 (2 Am. Dec. 417); *Rogers* v. *Waller,* 4 Haywood, 205 (9 Am. Dec. 417); *Spurgeon* v. *McElwain,* 6 Ohio, 442 (27 Am. Dec. 266); *Schmidt* v. *Barker,* 17 La. Ann. 261 (87 Am. Dec. 527); *Lemon* v.

*Grosskoff,* 22 Wis. 447 (99 Am. Dec. 59); *Miller* v. *Ammond,* 12 Sup. Ct. 884; *Thompson* v. *William,* 58 N. H. 249; *Sullivan* v. *Horgan,* 17 R. I. 109.

An action founded on a transaction prohibited by statute cannot be maintained, although a penalty is imposed for violating the law, and it is not expressly declared that the contract shall be void: *Mitchell* v. *Smith,* 1 Binn. 110 (2 Am. Dec. 417); *Seidenbender* v. *Charles,* 4 Serg. and R. 151 (8 Am. Dec. 682); Note to 99 Am. Dec. 59.

Attempt to contravene the policy of a public statute is void: *Sharp* v. *Teese,* 4 Halst. 352 (17 Am. Dec. 479); *Phillips* v. *Thorp,* 10 Or. 497; *Willis* v. *Hoover,* 9 Or. 418; *Buchtel* v. *Evans,* 21 Or. 309; *Holladay* v. *Davis,* 5 Or. 40; *Ah Doon* v. *Smith,* 25 Or. 89; *Oregon Railroad Company* v. *Potter,* 5 Or. 228.

The settlements pleaded in the answer are conclusive. An account stated, whether items be erroneously included or omitted, is conclusive between the parties, unless leave be given to surcharge or falsify it. Sometimes it may be set aside, but this can be done only on appropriate pleadings showing fraud or mistake, and definitely pointing out the errors to be corrected: *Hunter* v. *Aldrich,* 52 Iowa, 442; *Levi* v. *Karrick,* 13 Iowa, 344; *Bull* v. *Harris,* 31 Ill. 487; *Gage* v. *Parmlee,* 87 Ill. 329; *Sutphen* v. *Cushman,* 35 Ill. 186; *Kilpatrick* v. *Henson,* 81 Ala. 465; *Martin* v. *Beckwith,* 4 Wis. *219; *Barker* v. *Hoff,* 52 How. Pr. 382; *McNeel* v. *Baker,* 6 W. Va. 153; *Ruffer* v. *Hewitt,* 7 W. Va. 585; *Stuart* v. *Sears,* 119 Mass. 143; *Kroenberger* v. *Bing,* 56 Mo. 121; *Pickel* v. *St. Louis Chemical Company,* 80 Mo. 65; *Threlkeld* v. *Dobbins,* 45 Ga. 144; *Hawkins* v. *Long,* 74 N. C. 781; *Lockwood* v. *Thorne,* 11 N. Y. 170 (62 Am. Dec. 81); *Horan* v. *Long,* 11 Tex. 230; *American National Bank* v. *Bushey,* 45 Mich. 141; *Marye* v. *Strouse,* 6 Sawy. 217; *Neff* v. *Wooding,* 2 S. E. 731; *Moody* v. *Thwing,* 49 N. W. 229; *Union Bank*

v. *Knapp,* 3 Pick. 96 (15 Am. Dec. 181); *Brown* v. *Vandyke,* 4 Halst. Ch. 795 (55 Am. Dec. 256); *Branger* v. *Chevalier,* 9 Cal. 353; *Terry* v. *Sickles,* 13 Cal. 427; *Oil Company* v. *Van Etten,* 107 U. S. 325; *Fleischner* v. *Kubli,* 20 Or. 328; *Hoyt* v. *Clarkson,* 23 Or. 57. The effect of this rule is that a party to a settlement cannot voluntarily withhold from a settlement an item that properly belongs therein and afterwards recover on it.

The law is settled that if a complaint alleges in terms a cause of action in tort, and the proof shows a breach of contract, no recovery can be had, and the action must be dismissed, even though, by disregarding the averments of tort, and treating them as surplusage, there might remain sufficient to show a liability on contract: Pomeroy on Remedies and Remedial Rights, § 558, *et seq.*; *Ross* v. *Mather,* 51 N. Y. 108 (10 Am. Rep. 562); *DeGraw* v. *Elmore,* 50 N. Y. 1; *Sager* v. *Blaine,* 44 N. Y. 445; *Moore* v. *Noble,* 53 Barb. 425; *Rothe* v. *Rothe,* 31 Wis. 570 (34 Am. Dec. 160); *Anderson* v. *Case,* 28 Wis. 505; *Supervisors* v. *Decker,* 30 Wis. 624; *Johanneson* v. *Borschenius,* 35 Wis. 131; *Dean* v. *Yates,* 22 Ohio St. 388; *Nowling* v. *McIntosh,* 89 Ind. 595; *Watts* v. *McAllister,* 33 Ind. 264. The averments of fraud ought not to be disregarded, however, for they characterize the complaint, and show that this was intended to be an action of tort. The allegations in this case are such as to stamp it unmistakably as an action *ex delicto,* and as such the case must stand or fall: *Rothe* v. *Rothe,* 31 Wis. 570 (34 Am. Dec. 160).

The plaintiff, having once elected to sue in tort must abide by his choice. He could not himself, much less could the court for him, waive the tort and recover as on contract: *Bulkley* v. *Morgan,* 46 Conn. 394; *Butler* v. *Hildreth,* 5 Metc. 49; *Bailey* v. *Hervey,* 135 Mass. 172; *Morris* v. *Rexford,* 18 N. Y. 552; *Rodermond* v. *Clark,* 46 N. Y. 354; *Moller*

v. *Tuska,* 87 N. Y. 166; *Dibble* v. *Sheldon,* 10 Blatch. 178; *Nield* v. *Burton,* 49 Mich. 53.

But the plaintiff could not waive the tort under the state of facts alleged in the complaint and sue in assumpsit, because it does not appear that defendant has sold the wheat or received any money for it. The rule is that a person from whom goods are wrongfully taken may waive the tort and in an action as for money had and received recover what the wrongdoer has received for them. But unless the property has been sold by the defendant, the plaintiff cannot recover in assumpsit: *Watson* v. *Stever,* 25 Mich. 386; *Centre Turnpike Company* v. *Smith,* 12 Vt. 212; *Stearns* v. *Dillingham,* 22 Vt. 624 (54 Am. Dec. 88); *Crow* v. *Boyd,* 17 Vt. 51; *Pike* v. *Wright,* 29 Ala. 332; *Fuller* v. *Duren,* 36 Ala. 73 (76 Am. Dec. 318); *Mann* v. *Locke,* 11 N. H. 246; *Smith* v. *Smith,* 43 N. H. 536; *Randolph* v. *Elliott,* 34 N. J. L. 184; *Budd* v. *Hiler,* 27 N. J. L. 43; *Balch* v. *Patton,* 45 Me. 41 (71 Am. Dec. 526); *Moses* v. *Arnold,* 43 Iowa, 187 (22 Am. Rep. 239).

For respondent there was an oral argument by *Messrs. Chas. E. Wolverton* and *N. L. Butler,* and a brief by *Messrs. Wolverton,* and *Butler and Townsend,* making these points:

A settlement between parties is *prima facie* to be deemed a settlement of all demands, but it is not conclusive, and is no bar to a recovery for matters not included in it, though existing at the time: *Normandin* v. *Gratton,* 12 Or. 505; *Rourke* v. *James,* 4 Mich. 336; *Tuggle* v. *Minor,* 18 Pac. 131; *Hughes* v. *Metasche,* 7 Or. 39; *Wharton* v. *Cain,* 50 Ala. 408. The giving of a promissory note is *prima facie* evidence of an accounting and settlement of all demands between the parties. The presumption is only *prima facie,* however, and is liable to be explained: *Davis* v. *Gallagher,* 55 Hun, 593; *Lake* v. *Tyson,* 6 N. Y. 461; *Sherman* v. *McIntyre,* 7 Hun, 592.

The complaint is sufficient to maintain trover, and states a cause of action: *Howe* v. *Kreling*, 28 Pac. 1042; *Redpath* v. *Lawrence*, 42 Mo. App. 101; *Nanson* v. *Jacob*, 93 Mo. 331 (6 S. W. 247, 3 Am. St. Rep. 531); *Thayer* v. *Gill*, 42 Hun, 268; 3 Sutherland on Damages, 487; 4 American and English Encyclopædia of Law, 104–119.

The complaint is sufficient to sustain an action for deceit, should it be contended that the facts will not warrant an action of trover: *Rolfes* v. *Russell*, 5 Or. 401; *Tong* v. *Marvin*, 15 Mich. 60; *Brown* v. *Castle*, 11 Cush. 348.

In any event the complaint is sufficient after verdict: *Hyland* v. *Hyland*, 19 Or. 51; *Andros* v. *Childers*, 14 Or. 447; *Aiken* v. *Coolidge*, 12 Or. 245; *Specht* v. *Allen*, 12 Or. 122; *Willer* v. *Oregon Railway and Navigation Company*, 15 Or. 153; *Gschwander* v. *Cort*, 19 Or. 517; *McKay* v. *Musgrove*, 15 Or. 162; *Kean* v. *Mitchell*, 13 Mich. 207; *Beebe* v. *Knapp*, 28 Mich. 52; *Rosenthal* v. *McMann*, 29 Pac. 121; *Friendly* v. *Lee*, 20 Or. 208.

The finding of the referee has the force of the verdict of a jury. The motion *non abstante* was filed after the report of the referee was in, and we claim that no greater advantage can be gained by this motion than by one to set aside the findings of the referee, or the verdict of a jury: Hill's Code, § 229; *Merchants' National Bank* v. *Pope*, 19 Or. 42; *Bartel* v. *Matthews*, 19 Or. 483: *Johnson* v. *Wallower*, 18 Minn. 262; *Malone* v. *Minnesota Stone Company*, 36 Minn. 326; *McAlister* v. *Walker*, 39 Minn. 536.

If it be considered that the cause of action is one of tort, but arising *ex contractu*, the complaint will support assumpsit, and the allegations of fraud and conversion will be treated as surplusage, especially after a trial: *Sukesdorf* v. *Bingham*, 13 Or. 369; *Samuels* v. *Blanchard*, 25 Wis. 329; *Wright* v. *Horkee*, 10 N. Y. 51; *Greason* v. *Keteltas*, 17 N. Y. 491; *Bixbie* v. *Wood*, 24 N. Y. 607; *Bearce* v. *Bowker*, 115 Mass. 129.

Opinion by MR. CHIEF JUSTICE BEAN.

In July, eighteen hundred and ninety-four, judgment was rendered in this court affirming the judgment of the court below: 37 Pac. 85. A rehearing was subsequently granted, and in the light of an able reargument we have again carefully considered the question by which the judgment was controlled, but still feel compelled to adhere to our former conclusion. We have, however, taken occasion to make some changes in the language of the opinion, with the view of more fully and clearly stating the reasons by which we are governed, and the present opinion will, therefore, be substituted for that formerly filed. We begin by saying that the findings of fact, which stand as the verdict of a jury, and, for the purposes of this appeal, must be regarded as true, show that the defendant received from Bentley and appropriated to his own use ten thousand two hundred and eleven bushels of wheat, of the value of seven thousand eight hundred and eighty-one dollars, which he knew at the time he did not own, and for which he refuses to account. Upon the merits, then, the judgment is right, and the principal question on this appeal is whether the findings of fact are sufficient, under the pleadings, to support the judgment.

1. The contention for the defendant is that, as the court found the allegation of fraud in the complaint to be untrue, the remaining facts as found by it only show a breach of an implied contract of sale, and, therefore, under the well settled rule that a recovery cannot be had on a complaint which in terms alleges a cause of action sounding in tort by proof of the breach of a contract express or implied, the judgment must be reversed. If the premises upon which this argument is based are conceded, the conclusion inevitably follows, for the rule re-

ferred to is too well settled to be questioned. After a careful consideration of the able reargument of this case, and a reëxamination of the record, we concur with counsel that the complaint sounds in tort, and will not support an action on a contract, and the holding to the contrary in the former opinion is erroneous. The plaintiff must recover in tort, or not at all. He has so laid his cause of action, and must abide the result.

2. But we are also satisfied that there was an error in assuming, as the former opinion did, that the findings of fact show an implied contract of sale, and that the allegations of fraud in the complaint were essential to an action in trover. Without these allegations the complaint still contains facts sufficient to constitute a cause of action for an unlawful conversion. Omitting the allegations of fraud and deceit, the complaint avers: "That plaintiff during the years eighteen hundred and eighty-seven, eighteen hundred and eighty-eight, eighteen hundred and eighty-nine, and eighteen hundred and ninety, was engaged in the warehouse and storage business in the town of Independence, county of Polk, and State of Oregon; that during said years plaintiff, as such warehouseman, received for storage from the owners thereof large amounts of wheat, for which plaintiff charged and received from each of said persons so storing wheat with him four cents per bushel for the first year, and one and one tenth cents per bushel for each year thereafter; that such wheat was so kept in storage by plaintiff for the owners thereof; that plaintiff issued to all persons so storing wheat with him receipts for the full amount of such wheat so stored by each person; that such wheat was to be delivered by plaintiff upon order of the owner or owners of such wheat on board of boats or cars, the purchasers thereof to pay for sacks containing said wheat, and that plaintiff thereby became and was the

lawful bailee of said wheat; that during said years said defendant was engaged in business, and purchased of and from the persons having wheat in storage with this plaintiff as aforesaid; that at divers times during said years said defendant, * * * representing to this plaintiff that he was the owner of and had purchased large quantities of wheat in storage with plaintiff, as aforesaid, * * * ordered and directed this plaintiff, as such warehouseman, at divers times, to ship for and deliver to him large amounts of said wheat, aggregating eighty-four thousand and seven bushels; that, fully relying upon said * * * statements and representations of said defendant, * * * this plaintiff, as such warehouseman, did at such times ship for and deliver to said defendant quantities of such wheat aggregating the full amount of eighty-four thousand and seven bushels, as will more fully appear by the itemized statement of wheat delivered and shipped upon the order of defendant by plaintiff, hereunto attached, marked 'Exhibit A'; that in truth and in fact, said defendant, during said years, was the owner of wheat so in storage in the plaintiff's warehouse in the aggregate of no more than seventy-three thousand seven hundred and ninety-five bushels, as will more fully appear by itemized statement of wheat owned and purchased by said defendant in the warehouse of plaintiff during the time aforesaid, hereto attached, marked 'Exhibit B'; that plaintiff, so being in the lawful possession of said wheat, as such warehouseman and bailee as aforesaid, * * * shipped for and delivered to defendant ten thousand two hundred and eleven bushels of wheat in excess of the amount owned by said defendant, or of which he, defendant, was entitled to the possession; that said defendant has, prior to the commencement of this action, wrongfully and unlawfully converted said wheat to his own use; that, although de-

mand therefor has been duly made upon said defendant for the return of said ten thousand two hundred and eleven bushels of wheat, said defendant has wholly neglected and refused to account for or deliver said wheat to plaintiff, or any part thereof; that plaintiff was at all times since the storage of said ten thousand two hundred and eleven bushels of wheat with him, and is now lawfully entitled to the possession of the same and every part thereof, and the value thereof is nine thousand one hundred and eighty-seven dollars; that by reason of said wrongful and unlawful conversion of said wheat, and said wrongful acts as aforesaid of said defendant, plaintiff is damaged in the full sum of nine thousand one hundred and eighty-seven dollars, the value of said wheat so converted by said defendant."

It thus appears that the complaint is manifestly sufficient, at least after verdict, to sustain an action for trover, after eliminating therefrom all the allegations of fraud. The action of trover is founded upon the right of property, general or special, and right to the possession in plaintiff, and possession and an unlawful conversion by defendant. The material averments in an action of this character are ownership and right to the possession in plaintiff, and that the defendant wrongfully took and converted the property in question to his own use, or that, being lawfully in possession thereof, he so converted it: 26 American and English Encyclopædia, 801. Now, the complaint in this case contains these essential averments. It alleges that Bentley was the bailee, and as such entitled to the possession, of the wheat in question, and that it was delivered to the defendant at his request and upon his direction, and by him subsequently converted to his own use. The gist of the action is the unlawful conversion, not deceit, and the means used by the defendant to obtain possession are wholly immate-

rial.  The title or right to the possession did not pass by
the delivery, because, as defendant knew, Bentley had no
title which he could dispose of, and he did not intend to
surrender his right to the possession of any wheat ex-
cept such as belonged to the defendant.  The complaint
shows that Bentley was not the owner, that he did not
pretend to be, and that he did not purport to pass title to
the defendant.  On the contrary, he delivered the wheat
because he thought the defendant owned it, and, when he
discovered his mistake, demanded its return.  There is
no material difference between the findings of the court
and the averments of the complaint, except the complaint
alleges that Bentley was induced to part with the posses-
sion of wheat by false and fraudulent representations of
the defendant, which the court finds is not true.  But, as
we have said, disregarding the allegations of fraud, the
complaint contains enough to show that defendant ob-
tained from Bentley possession of a certain quantity of
wheat which belonged to his (Bentley's) bailors, and to
the possession of which he was entitled, and which the
said defendent subsequently converted to his own use.

3.  Whether the findings would support an action *ex
contractu* is not material, because the question of election
was with Bentley, and not the defendant.  Under some
circumstances a plaintiff may waive a tort, and sue in
contract, but he is not compelled to do so.  The defend-
ant having received and wrongfully converted to his own
use property in which Bentley had both a right of prop-
erty and right of possession, cannot insist that Bentley
shall waive the tort and sue in assumpsit for its value.
He was entitled to adopt the form of action which he
preferred.

4.  Having elected to proceed in tort, plaintiff is en-
titled, after judgment, to have the findings of the court
construed to support the judgment, if it can be done

without violating well settled rules of law. Unless, therefore, the findings show an express contract of sale, or facts from which the law will necessarily imply a sale or attempted sale, the judgment will be sustained. Every inference and intendment is in favor of the judgment of the court below.

5. Now, it is not pretended that there was any express sale, nor do we think the findings necessarily show an implied sale or purchase. To constitute a sale, either express or implied, there must be an intention by the vendor to sell and by the vendee to purchase, which does not appear in this case. Bentley did not own the property, had no power or authority to sell it, and certainly the law will not imply a sale where an express one could not have been legally made. And, besides, there is nothing to indicate that he intended to sell, nor that defendant intended to purchase. It is but a fair inference from the record that Bentley supposed he was delivering to the defendant that which belonged to him, and the defendant, although he knew he was receiving wheat to which he had no title, did not intend to purchase. As appears from the complaint and the findings of the court, this is a case where one bailor has, by mistake of a common bailee, obtained possession from him and wrongfully converted to his own use property belonging to another bailor, and which the bailee is seeking to recover in an action of trover. Bentley was simply a bailee for the defendant and the other owners of wheat on storage with him, and accountable to each for the quantity belonging to him; and when, by mistake, he surrendered possession to the defendant of a greater quantity than he was entitled to, he was not bound to treat the transaction as a sale, nor did he estop himself from recovering possession of the excess, or its value in case of conversion, although no fraud or misrepresentation was used to

induce the delivery.  It is immaterial in this case what means were used by the defendant to gain possession, so long as there was no intention to pass the title.  His possession, if not unlawful from the beginning, became so as soon as demand was made for the return of the wheat to which he was not entitled; and when he failed to return it after such demand, he became a wrongdoer, and liable to the plaintiff in an action of trover.  Although Bentley may have delivered the wheat voluntarily, it is but a fair inference that he was acting in good faith, on the supposition that it belonged to the defendant, and with no intention to deliver any wheat to him of which he was not the owner.  When he discovered his mistake he demanded its return in order that he might carry out his contract of bailment with the true owners; and defendant, having refused to comply with this demand, is, in our opinion, liable in this form of action for the value of the wheat, and the findings are amply sufficient to support the judgment.

6.    It is next contended that the delivery of the wheat to defendant being made in violation of sections 4201–4207 of Hill's Code, which makes it a crime for any person operating a warehouse to sell, encumber, ship, transfer, or in any manner remove, or permit to be shipped, transferred, or removed, beyond his custody or control, any grain for which a receipt has been given, without the written consent of the owner, the plaintiff cannot recover for its wrongful conversion.  It may well be doubted whether the defendant could avail himself of the defense of illegality in this action; but, however that may be, no such defense is set up in the answer, and therefore he is not entitled to the benefit of it as a matter of right: *Ah Doon* v. *Smith,* 25 Or. 89 (34 Pac. 1093); *Cardoze* v. *Swift,* 113 Mass. 250.   To entitle a defendant to the defense of illegality he must plead it, although a failure to do so

will not compel the court to entertain the action when such illegality appears, but it may dismiss it *sua sponte.*

7. The question then remains whether the court ought, upon grounds of public policy and good morals, to reverse this judgment and dismiss the action, because there may have been a technical violation by Bentley of the statute in delivering possession of the wheat to defendant. We certainly think not. The rule seem to be quite well settled that courts will refuse, on grounds of public policy and good morals, to enforce an illegal or immoral contract, or to sustain an action when its object is to enforce the provisions of an engagement prohibited by law, but this case is not strictly of that character. It is rather in disaffirmance of the illegal act of delivering the wheat to the defendant, and does not grow out of any contract or agreement in violation of the statute, but arises from the fact that defendant has received, through mistake, and converted to his own use, property which belonged to Bentley as bailee. It is true the violation of the statute made it possible for the defendant to convert the wheat, but there was no actual criminal or fraudulent intent on the part of Bentley, and therefore plaintiff ought not to be summarily turned out of court, and the defendant thereby escape liability, because Bentley may have been technically guilty of a crime in putting it within his power to appropriate the wheat. Having received it from Bentley without any lawful right thereto, and converted it to his own use, it seems to us the court ought not, of its own motion, to interpose in his behalf on the ground of a violation of the statute, and thus allow him to reap the benefit of his own wrongful act. If he intended to rely upon such a defense he should have set it up in his answer, and, not having done so, the court will not make it for him.

8. It is further contended that the settlement pleaded

in the answer is a bar to this action, because the reply does not contain appropriate allegations upon which evidence to surcharge or falsify it could be admitted. No objection was made to the sufficiency of the reply by demurrer or otherwise, and we think it comes too late when made for the first time by motion for judgment notwithstanding the findings of the referee. It avers that the settlements alleged in the answer did not include the claim upon which this action is founded, or any part thereof, or have any reference thereto; and, while it may have been defective in not setting forth fully the fraud, error, or mistake relied upon to surcharge or falsify the settlement, we are not trying the question on demurrer, but considering the sufficiency of the pleading after verdict. In such case it is entitled to the benefit of every reasonable inference and intendment in support of the judgment, and will not be held insufficient for a mere defective statement: *Gschwander* v. *Cort,* 19 Or. 513 (26 Pac. 621); *Andros* v. *Childers,* 14 Or. 447 (13 Pac. 65); *Aiken* v. *Coolidge,* 12 Or. 244 (6 Pac. 712). From the pleadings and findings of the referee and court it appears that the claim upon which this action is based was not included in any settlement had between the parties, and this is sufficient after verdict, although the reply may have been vulnerable to a demurrer. It follows from these views that the judgment of affirmance is right and will be adhered to.

AFFIRMED.

Mr. Justice WOLVERTON having been of counsel and argued the case on the first appeal, did not participate in this decision.