**FELDER et al. v. REETH.**

Circuit Court of Appeals, Ninth Circuit. September 16, 1929.

No. 5718.

the territory of Alaska to recover $5,402.65 for goods, wares, and merchandise sold to the appellee and for appellee's checks cashed by appellant. The appellee admitted the obligations sued upon, and by second amended answer and counterclaim alleged that he was engaged in placer mining upon 1,200 acres of placer mining ground, and that to carry on said mining operations he purchased a certain hydraulic mining plant in San Francisco, and transported the same to a point 40 miles below his placer mining camp, for the reason that because of low water in the stream he could not transport the machinery to the mining camp; that it remained at that point during the seasons of 1919, 1920, and 1921 by reason of low water in the river; that the freight charge for transportation of this plant from San Francisco was $1,045; that during the summer of 1921 the appellants wrongfully took possession of the hydraulic plant, transported the same down the river to Bethel, and converted same to their own use and sold a part thereof. It is further alleged:

"That under the conditions then existing at said Golden Gate Falls and 'Supply Camp' the said mining machinery and equipment was reasonably worth to defendant and were of the value to him of $10,000.00."

"That defendant elects to waive the tort involved in the said unlawful taking and conversion of said property and to rely upon an implied contract upon the part of the plaintiffs, created by the law, to pay him the said sum of $10,000.00 for said machinery and equipment, the same being the reasonable value therefor by the time it reached the 'Supply Camp'; that the said plaintiffs, by reason of the premises, impliedly agreed, and in law did agree, to pay him the said sum of $10,000.00 for the said machinery and equipment."

Under the Alaska Code, a counterclaim to an action arising out of contract must be either one arising out of the transaction sued upon by the plaintiff, or, "In an action arising on contract, any other cause of action arising also on contract, and existing at the commencement of the action." Comp. Laws Alaska 1913, § 896.

The purpose of the form of pleading adopted by the appellee waiving, or attempting to waive, the tort, and suing upon the implied obligation of the appellant, was to bring his counterclaim within the purview of the statute, authorizing the setting up of a counterclaim.

The Code provisions of Alaska on the subject of counterclaim were borrowed from

Geo. W. Albrecht and Chas. E. Taylor, both of Fairbanks, Alaska, for appellants.

Louis K. Pratt, of Fairbanks, Alaska, for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

WILBUR, Circuit Judge. Appellants brought an action in the District Court for

the Code of Oregon, under which it has been held by the Supreme Court of Oregon that in cases of conversion tort could be waived and the counterclaim could then be set up in an action upon contract. Miller v. Hirschberg, 27 Or. 522, 40 P. 506; Casner v. Hoskins, 64 Or. 254, 128 P. 841, 130 P. 55; see also Cooley on Torts, §§ 160–166; Farmers' & Merchants' Nat. Bank v. Huckaby, 89 Okl. 244, 215 P. 429; Chamberlain v. Townsend, 72 Or. 207, 142 P. 782, 143 P. 924; Fanson v. Linsley, 20 Kan. 235; 2 R. C. L. 760, § 19.

The appellant demurred to the counterclaim on the ground that the court had no jurisdiction of the subject-matter set up in the amended answer and counterclaim, and the counterclaim did not state facts sufficient to constitute a defense to the plaintiff's complaint. The demurrer was overruled, and appellants replied, denying that the sum of $10,000 was or is a reasonable and fair value of the hydraulic mining equipment, or that it was worth more than $550. Appellants admitted taking the property, and alleged that it was taken to avoid a total loss thereof by flood waters of the Riglugalic river, on whose banks it had been placed. Appellants alleged that the property was in an abandoned condition until the fall of 1921; that they took possession of the property, and transported it to Bethel, and notified the defendant; that appellee ignored the entire matter; that they retained possession of the hydraulic plant until 1923, when for the first time they had an opportunity to dispose of the same; and that they sold it for the sum of $550, and that that sum was all the property was worth in Kuskokwin Precinct.

The case was tried at Bethel, and by stipulation neither of the attorneys appeared at the trial. The parties themselves presented such witnesses as they desired to offer, and the witnesses were examined by the judge. Thereupon the case was transferred to Fairbanks, and counsel argued the case before the judge, who, by reason of written stipulation waiving the jury, determined the facts. The court found that the appellee was indebted to the appellant in the sum of $8,690.21, and that the appellants were indebted to the appellees in the sum of $8,000, with 8 per cent. interest from September 1, 1921, aggregating $12,480, and rendered judgment in favor of appellees for the difference, $3,789.79. With reference to the value of the hydraulic plant, the court found:

"That under the circumstances and conditions as they existed at that time and by reason of the fact that there was no market value for said machinery at that time and place, and by reason of the use that the defendant could have put it to, the said machinery was worth to him the sum of $8,000 and he is entitled to counterclaim that amount with interest thereon at eight per cent. per annum from September 1, 1921, aggregating $12,480 as against the debt owing by him to the plaintiffs."

"That the action of the plaintiffs in taking the said machinery and disposing of it was without the knowledge or consent of the defendant, was unlawful, unjustifiable and oppressive and resulted in compelling the defendant to abandon his mining enterprise at Golden Gate Falls."

Before the findings were signed, appellant proposed amendments to the defendant's proposed findings of fact and conclusions of law to the effect that appellees were indebted to appellants in the sum of $550 on account of the hydraulic plant, and that that amount had already been credited in their accounts.

■ There seems to be no doubt that appellees can assert their claim against the appellants in this action by a counterclaim in the event and because of the fact that they waived the tortious conversion and counted in assumpsit as for goods sold and delivered. Casner v. Hoskins, 64 Or. 254, 128 P. 841, 130 P. 55, supra, and cases cited supra.

■ The most serious question in this case is the measure of damages for breach of the implied contract sued upon. At common law, under the older rule, the result of waiving the tort in a case of conversion and sale was a right to recover the amount received upon the sale, as for money had and received, but later cases hold that the action can be maintained as for goods sold and delivered without awaiting sale, or even after sale, and the measure of recovery is the market value of the property. Terry v. Munger, 121 N. Y. 161, 24 N. E. 272, 8 L. R. A. 216, 18 Am. St. Rep. 803, and authorities cited therein. See, also, numerous authorities cited in Pomeroy on Remedies (5th Ed.) p. 749, § 460, note 58. In a case where the owner waives the tort if he accepts the tort-feasor as his agent both in the taking and in the sale, he would necessarily be limited in his recovery to the money received by the agent. There seems, however, to be no good reason why the owner cannot waive the tortious taking and ignore the subsequent sale and recover the

reasonable value of the property taken as for goods sold and delivered. See Reynolds v. N. Y. Trust Co. (C. C. A.) 188 F. 611, 39 L. R. A. (N. S.) 391; Cooley on Torts (3d Ed.) vol. 1, p. 163; 2 R. C. L. 757, § 16, Terry v. Munger, supra. This was done by the appellee, who ignored the sale of his property made by the appellants, and sought to recover as upon an implied agreement to pay the value of the hydraulic plant. The complaint, construed more strongly against the pleader, does not allege the market value or reasonable value of the property taken by the appellants. The allegation is of the reasonable value "to him." This allegation is evidently based upon the case of Swank v. Elwert, 55 Or. 487, 105 P. 901, 902, par. 11, where it is said (page 906):

"The general rule for the measure of damages for the destruction or conversion of personalty is the market value of the property at the time and place of the conversion, if it has such value. Prettyman v. O. R. & N. Co., 13 Or. 341, 10 P. 634; Iler v. Baker, 82 Mich. 226, 46 N. W. [377] 337; Luse v. Jones, 39 N. J. Law, 707; Sutherland on Damages (3d Ed.) § 1109. But if the property has no market value at the time and place of conversion, either because of its limited production, or because it is of such a nature that there can be no general demand for it, and it is more particularly valuable to the owner than any one else, then it may be estimated with reference to its value to him. Sutherland on Damages, § 117; Iler v. Baker, supra."

This is made clearer by the findings of the court above quoted, where the court held that "the unlawful and oppressive conversion" resulted in compelling the abandonment of the appellee's mining operations, and that "the value to him was $8,000 because of the use to which he could have put it." Assuming that this is a proper measure of damages in a suit for conversion under the peculiar circumstances found by the court, it does not follow that the appellee is entitled to recover that amount upon his counterclaim in which he waived the tort. It must be evident that, by consenting to the taking of his property and treating the taking as a sale by him, he cannot in justice or in law count upon the special value to him of the use of property which he thus declares he no longer intends to use. While the pleadings superseded by amendment no longer bind the parties, it appears from the appellant's sworn statement of his counterclaim in his first answer that the total cost to him of the hydraulic plant was $3,000. Thus, in so far as appears from the record here, the property could have been replaced at the point where it was converted for $3,000.

The significance of the allegation of the counterclaim and the 'finding of the court as to the value to the appellee of said hydraulic plant is manifest, in that it appears that $5,000 was or may have been added by the court to the cost of said property because of the special value of the property to the plaintiff under the circumstances.

■■ The transcript contains no bill of exceptions, and the evidence is not before this court. The primary question presented by the record is the sufficiency of the counterclaim to state a cause of action against the appellant. The demurrer raising this point was overruled. It should have been sustained for lack of an allegation as to the value of the property impliedly sold by the appellee to the appellant. We do not agree with the appellant's contention that the appellee is bound by his allegation alleging a wrongful taking so that he cannot assert his rights as a counterclaim, for under the system of code pleading a statement of the actual facts, rather than the assumed or fictitious facts, with a statement that the party waives the tort and relies upon implied contract, is a proper method of pleading the implied contract to pay the value of the property taken. See 5 C. J. § 41, p. 1305; Woodruff v. Zaban & Son, 133 Ga. 24, 65 S. E. 123, 134 Am. St. Rep. 186, 17 Ann. Cas. 974; Smith v. McCarthy, 39 Kan. 308, 18 P. 204. For this error in overruling the demurrer, and for the further reason that the findings do not follow the pleadings, in that the trial court ignores the waiver of the tort and gives damages as for a tort, the judgment must be reversed. In view of the fact that this case must be tried again, it should be stated that, as the appellee by his counterclaim seeks to recover the value of the property as upon an implied sale, he should be permitted to amend his counterclaim and allege that value.

■ "If the wrong-doer has not sold the property, but still retains it, the plaintiff has the right to waive the tort, and proceed upon an implied contract of sale to the wrong-doer himself, and in such event he is not charged as for money had and received by him to the use of the plaintiff. The contract implied is one to pay the value of the property as if it had been sold to the wrong-doer by the owner. If the transaction is thus held by the plaintiff as a sale,

748

of course the title to the property passes to the wrong-doer, when the plaintiff elects to so treat it. See Pom. Rem. (2d Ed.) §§ 567–569; Putnam v. Wise, 1 Hill [N. Y.] 234, 240 [37 Am. Dec. 309], and note by Mr. Hill; Berly v. Taylor, 5 Hill [N. Y.] 577, 584; Norden v. Jones, 33 Wis. 600, 605 [14 Am. Rep. 782]; Cummings v. Vorce, 3 Hill [N. Y]. 283; Spoor v. Newell, 3 Hill [N. Y.] 307; Abbott v. Blossom, 66 Barb. [N. Y.] 353." Terry v. Munger, 121 N. Y. 161, 24 N. E. 272, 8 L. R. A. 216, 18 Am. St. Rep. 803.

■ If on the trial it appears that there is no market at the point of conversion or implied sale, as from the findings appears to be the case, the value must be determined at the nearest market less the costs of transportation thereto, 8 R. C. L. 489, § 49; Watt v. Nevada Cent. Ry. Co., 23 Nev. 154, 44 P. 423, 46 P. 52, 726, 62 Am. St. Rep. 772, for in case of a waver of a tort in conversion the action ex contractu is sustained rather on the theory of benefit derived by the taker than of damage to the owner, Huganir v. Cotter, 102 Wis. 323, 78 N. W. 423, 72 Am. St. Rep. 884; National Trust Co. v. Gleason, 77 N. Y. 400, 33 Am. Rep. 632; Keener, Quasi Cont. 200; Woodward on the Law of Quasi Contracts, § 292. See, also, 1 C. J. 1040, § 169; 2 R. C. L. 761, § 20.

■ Interest should be allowed from the date of the taking, as the plaintiff's election relates back thereto, Newton Mfg. Co. v. White, 53 Ga. 396; Woodward on the Law of Quasi Contracts, § 293, although there is authority to the contrary, Dougherty v. Chapman, 29 Mo. App. 233.

Judgment reversed.