Argued October 30, decided December 17, 1912, rehearing denied February 25, 1913.

## CASNER v. HOSKINS.*

(128 Pac. 841.)
(130 Pac. 55.)

**Pleading—Counterclaims—Sufficiency.**

1. Under Sections 73, 74, L. O. L., providing that a statement of new matter constituting a defense shall be in concise language, without repetition, and that the defendant may set forth as many defenses as he may have, which shall be separately stated and refer to the cause of action which they are intended to answer,

---

*The question of judicial notice as to law of other state is discussed in a note in 67 L. R. A. 34.

For conflict of laws as to chattel mortgages, see note in 64 L. R. A. 353.

On the question of presumption as to law of other state or country see notes in 21 L. R. A. 471; 67 L. R. A. 40 and 34 L. R. A. [N. S.] 261.

The question of the conflict of laws as to usury, generally, is treated in a note in 62 L. R. A. 33. And as to conflict of laws in an action to foreclose real estate mortgage, see note in 55 L. R. A. 933.

Upon enforcement of a mortgage on real property valid according to the law of the place where made and payable, but usurious according to the *lex fori et rei sitae,* see note in 4 L. R. A. (N. S.) 1191.    REPORTER.

counterclaims which referred to later ones and stated that no part of the amount claimed had ever been paid except as hereinafter alleged were sufficiently definite by reference.

### Bills and Notes—Actions—Admissions.

2. While the giving of a promissory note raises a disputable presumption that all antecedent demands between the parties not embraced in any writing were included in the settlement consummated by the execution of the note, that principle has no application to the giving or renewal of a note induced by fraud, or without consideration, and hence a maker can testify to the lack of consideration for a renewal note.

### Trial—Admissibility—Relevancy.

3. Evidence not responsive to any issue under the pleadings must be stricken on motion, even though similar testimony has been received without objection.

### Appeal and Error—Review—Harmless Error.

4. The erroneous exclusion of evidence subsequently admitted is harmless.

### Pleading—Evidence—Admissibility—Relevancy.

5. In an action on a promissory note, where defendant set up as a counterclaim that plaintiff was indebted to him for the construction of a railroad of which plaintiff had taken possession, and plaintiff's reply did not allege that possession had been taken under a chattel mortgage, evidence as to who owned the railroad and as to why plaintiff took possession was irrelevant.

### Evidence—Judicial Notice—Form of.

6. While under Section 729, subd. 3, L. O. L., the courts will take judicial notice of domestic and federal statutes, they will not take judicial notice of the laws of another state.

### Statutes—Foreign Laws—Necessity of Pleading.

7. While it is necessary to allege the existence of laws of which the court will not take judicial notice, and a party relying on a statute of a foreign state must plead it and allege facts to bring his case within it, or he cannot rely on it, this rule does not apply to parties who have had no opportunity to plead such statute.

### Appeal and Error—Pleading—Amendment Regarded as Made—Assumptions.

8. While permission to amend a pleading does not usually amount to an alteration of a party's formal allegations, yet where a party is granted leave to amend so as to allow the introduction

of important evidence, and the subsequent proceedings assume the change to have been in fact made, the pleading will be treated as amended without regard to actual alterations.

### Statutes—Pleading—Amendment—Effect.

9. Where plaintiff was permitted to make a trial amendment so as to introduce evidence rebutting defendant's counterclaim, it will, under the direct provisions of Section 95, L. O. L., be deemed to have been controverted as upon a direct denial, and hence a foreign law showing the defense to be invalid is admissible though not pleaded.

### Appeal and Error—Objections Below—Sufficiency.

10. Where evidence is generally material under the issues involved, an objection for incompetency or irrelevancy should particularly point out the reason assigned, and a general objection of incompetency and irrelevancy to the introduction of a foreign law will not preserve for appeal the question whether the law introduced was the one in existence at the time of the transaction.

### Set-Off and Counterclaim—Subject-Matter.

11. Under Section 74, subds. 2, 3, L. O. L., providing that, in an action on a contract, any other cause of action also on contract may be pleaded as a counterclaim, a conversion cannot be assigned as a counterclaim in an action on a note, although damages for fraud in the procuring of the note may be.

### Set-Off and Counterclaim—Trover and Conversion—Waiver of Tort.

12. Where plaintiff wrongfully took possession of a railroad constructed by defendant, defendant might waive the tort and upon sale by plaintiff treat him as his agent and recover in assumpsit the purchase price, or, under the broader American rule, waive the tort and bring an action for the value of the road, and hence may, under Section 74, subds. 2, 3, L. O. L., providing that in an action on contract any other cause of action on contract may be pleaded as a counterclaim, plead the taking of the road as a counterclaim in an action on a promissory note.

### Chattel Mortgages—What Law Governs—Rate of Interest.

13. Where it was not shown in what state a chattel mortgage was given, and it appeared that the mortgagor was at that time an inhabitant of two states, it will be presumed that the chattel

mortgage was governed by the laws of the State where the chattel is situated and the mortgage is to be performed.

**Set-Off and Counterclaim—Agreements—Effect.**

14. While, in the absence of an express contract to the contrary, mutual debts do not extinguish each other per se, and no interest can be collected upon an unliquidated demand until it has been determined by a judgment, yet where it was agreed that cross-demands should, when they became due, be allowed on notes bearing interest, credit must be allowed as soon as the demand accrues.

**Evidence—Presumptions—Foreign Laws.**

15. In the absence of any averment or proof on the subject, it will be presumed that the statute of limitations of a foreign state is the same as that of the forum.

**Trial—Instructions—Refusal.**

16. In an action on notes where defendant set up as a counterclaim the performance of certain work, and plaintiff claimed that he was not liable for payment therefor under a written contract, and the court charged that if the original credit was extended to plaintiff from whom defendant looked for payment, but the charge for work was made to a corporation at plaintiff's request and for his convenience, such book entries were immaterial, the refusal of requested instructions that, if the services were performed for others, plaintiff would not be liable unless he promised in writing to pay therefor was proper, being covered by correct instructions.

**Judgment—Entry of Judgment Time for Entry—"Day."**

17. Where a verdict was returned on May 31st, but judgment was not rendered until the following day, the judgment was not invalid under Section 201, L. O. L., providing that judgment, when upon a question of fact, shall be entered the day given; the statute merely being designed to crate a lien as soon as possible, and the expression "day" evidently meaning within 24 hours after verdict.

**Appeal and Error—Review—Pleading.**

18. On appeal an order permitting amendment of the answer to correrct a mistake will be treated as such amendment, though the amendment was not actually made, where the cause was tried as though it were.

Sig. 9

**Usury—Evidence—Sufficiency.**

19. Evidence held to sustain a finding that notes sued on were usurious.

**Evidence—Presumptions—Place of Execution of Note.**

20. In the absence of any evidence to the contrary, it will be presumed that a note was executed at the place where it pretends to be dated.

**Evidence—Presumptions—Place of Execution of Mortgage.**

21. A chattel mortgage will be presumed to have been given in the jurisdiction where it is sought to be enforced and where the property was when mortgaged, in the absence of evidence to the contrary.

**Usury—Mortgages—Laws Governing.**

22. A mortgage being only an incident of the debt, the validity of the security, so far as it may be affected by usury, is, in the absence of any enactment to the contrary, governed by the law applicable to personal contracts.

**Usury—Law Governing.**

23. In the absence of any attempt to evade the usury limitations, the law of a state where a contract was consummated governs the enforcement of its terms; but, where a contract is expressly or impliedly to be complied with in a place other than that where it was made, the presumed intention of the parties controls the interpretation of their agreement subjecting it to the law of the place of performance.

**Usury—Evidence—Admissibility.**

24. If one sued on notes has had no opportunity to plead statutes relative to usury, he is entitled to offer in evidence the appropriate statutes.

**Usury—Purging Mortgage of Usury.**

25. A mortgage tainted with usury cannot be validated by applying the excess interest on the principal.

**Usury—Enforcement of Usurious Mortgage—As Conversion.**

26. Seizure of personalty under a mortgage which is void, because usurious, is actionable conversion, though plaintiff paid from the proceeds the amount of prior liens; he being a mere volunteer in so doing.

Statement by MR. JUSTICE MOORE.

This is an action by F. W. Casner against J. A. Hoskins, to recover on three promissory notes of $10,000 each and one note of $1,750, executed by the defendant to the plaintiff, dated at Kansas City, Missouri, April 29, 1905, and payable at that place, the smaller note in 90 days, and the larger notes August 1st of that year, with interest on each from maturity until discharged at the rate of 8 per cent per annum. The interest was to have been paid semiannually, but if not so liquidated the accrued interest was to be as principal and bear the same rate. The complaint contains four separate causes of action in each of which is alleged the execution of one of the notes, the payments admitted to have been made on account thereof, and the sum of money asserted to be due thereon. Judgment was demanded for $45,000, or $13.12 less than the sum of the several amounts, with interest at the rate specified to be compounded semiannually from November 7, 1910.

The answer admitted the making of the notes, but denied all the other material allegations of the complaint. For further defenses to each cause of action and as counterclaims thereto it was alleged generally that, pursuant to contracts entered into by the parties, services were performed for, and property was sold and delivered by, the defendant to the plaintiff at his request, detailing the times, places, and circumstances whereby there become due to the defendant various sums of money which the plaintiff severally promised to pay. Each separate defense concludes with an averment that no part of the sums so asserted to be due had been paid except as thereinafter alleged. In the last paragraph of the answer is set forth the amount of the several counterclaims and the payments admitted to have been made on account thereof, in addition to what may have been stated in any of the separate defenses.

Some of the counterclaims were modified at the trial in respect to the sums claimed to be due and are briefly stated as follows: (1) That about December 1, 1904, the parties made a verbal agreement whereby the defendant stipulated to construct and did build for the plaintiff a narrow gauge railroad, about 5½ miles in length, from Catoosa, Indian Territory, to coal mines owned and controlled by him, which road was known as the Denver, Wichita & Memphis Railway, and will hereafter be indicated by its initials; that it was further agreed that the defendant should operate the road until it was completed and turned over together with the engines, rolling stock, etc., to the plaintiff, who was to pay therefor the money expended in building the road and in equipping it; that about August 15, 1905, the road having been fully completed and the equipment purchased at a total expense of $30,374.78, the defendant turned such property over to the plaintiff who promised to pay that sum therefor. (2) That the defendant built a spur from the Frisco Railroad to connect with the D., W. & M. Ry. at the agreed price of $1,279.44, on account of which he had received $620.94, thereby leaving due $658.50. (3) That he caused to be hauled quantities of coal and slack at agreed prices per ton amounting to $992.27. (4) That he caused to be mined and loaded upon cars an amount of coal at specified prices per ton aggregating $420.95. (5) That he sold and delivered to plaintiff other quantities of coal and slack at stated values per ton, amounting to $3,827.90. (6) That he stripped and excavated from a bed of coal certain quantities of earth at an agreed price per cubic yard, amounting to $17,381.98. (7) That he sold and delivered on plaintiff's order a team of horses, a wagon, a set of harness, and other property for the agreed price of $650. (8) That the notes sued on were given for money borrowed and advanced to the defendant's use, and for other notes for $9,000 given to the plaintiff who, for the latter

sum, agreed to deliver to him shares of corporate stock; that the notes given prior to April 29, 1905, for the several sums had been often renewed and interest thereon had been charged and thereafter computed until the maturity of the notes described in the complaint at the rate of 1 per cent a month; that the plaintiff never delivered to the defendant any of the corporate stock and $9,000, the price agreed to be paid therefor, and which was included in the notes described in the complaint, rendered them without consideration to that extent; that the promissory notes were payable in Missouri under the laws of which state only 8 per cent interest per annum can be legally collected, and that any greater rate is usurious and on contracts therefor no interest can be charged or collected; that the interest was computed on the notes sued on from April 29, 1905, until their maturity at 1 per cent a month, equaling $985.87, which was added to the principal, whereby the defendant is entitled to credit on the notes for $9,000 the partial failure of such consideration and to $985.87 as such usurious interest. (9) That the interest collected on such notes, at the usurious rate mentioned, prior to April 29, 1905, was $2,300, to which sum the defendant is also entitled as a credit. (10) That, prior to the maturity of the notes in question, the plaintiff agreed to discharge them from the various sums stated in the several counterclaims, amounting, as conceded at the trial, to $51,935.47; that such notes had not been credited with any part thereof, though the amount due thereon at their maturity was only $21,049.43, nor had any payment been made on the counterclaims except $5,169.96, aggregating $26,219.39, thereby leaving due $25,716.08, for which judgment was demanded.

The plaintiff, replying to the allegations of the new matter in the answer, denied the material averments thereof, except that he admitted that the shares of cor-

porate stock referred to were hypothecated and left with him after April 29, 1905, by the defendant as collateral security for the sum of $9,000; that thereafter the stock was never redelivered to him; that no part of the sum last mentioned was ever paid, in consequence of which the plaintiff sold the stock and credited the sum of money realized therefrom in part payment of the notes. It is alleged, in effect, that in the year 1904, and thereafter the plaintiff was, ever since has been, and is now, a resident of Missouri; that during the years 1904 and 1905 the defendant was an inhabitant of that state and also of Indian Territory; that under the law of Missouri no action can be maintained on any account after five years from the time it becomes due; that the defendant ought not to be permitted to aver or prove any of his alleged counterclaims for that at the time they severally matured neither he nor the plaintiff was a resident of Oregon; and that all the matters and things set forth in the answer are determinable under the laws of Missouri and not otherwise.

For a further reply it is averred, in substance, that on April 29, 1905, the parties hereto. had a full, fair, and complete settlement of all their previous dealings, and that there was then found to be due to the plaintiff $31,750, to evidence which the defendant executed the promissory notes described in the complaint, and that no payments have been made on account thereof except such sums as have been indorsed thereon. Judgment was therefore demanded as in the complaint. A trial was thereupon had, resulting in a verdict and judgment for the defendant in the sum of $8,247.34, and the plaintiff appeals.                                        AFFIRMED.

For appellant there was a brief over the names of *Messrs. Brooke & Tomlinson,* with an oral argument by *Mr. William H. Brooke.*

For respondent there was a brief over the names of *Mr. John L. Rand, Mr. William H. Packwood, Jr., Mr. A. A. Smith* and *Messrs. Wheeler & Hurley*, with oral arguments by *Mr. Packwood* and *Mr. Smith.*

MR. JUSTICE MOORE delivered the opinion of the court.

The bill of exceptions does not purport to contain or have attached thereto a transcript of the entire testimony given at the trial. The court certifies, however, that the bill contains all the evidence necessary to explain the objections interposed, the rulings thereon, and the exceptions taken, together with the entire charge to the jury and the instructions requested. It appears that on November 21, 1904, a written contract was entered into with the United States Oil & Mining Company, a corporation, of which plaintiff was the general manager, whereby the defendant stipulated, *inter alia,* to test with a drill the corporations coal lands at Catoosa, Indian Territory, in order to ascertain the depth of the vein, and, if merchantable coal were found in paying quantities, he would strip 200,000 cubic yards of earth from the surface of the bed, leaving the coal clean and ready to be loaded upon cars for transportation, for which service he was to be paid monthly at 14 cents per cubic yard for the material removed. The defendant further stipulated to build and maintain from Catoosa a narrow gauge railroad and to operate thereon engines, cars, and other equipment necessary to haul coal from the mines to that city, for which service he was to have been paid monthly at the rate of 25 cents per ton for coal and 15 cents per ton for slack. It was also provided that each party would execute to the other a good and sufficient bond in the sum of $25,000 for the faithful performance of his or its part of the agreement. No undertaking, however, was given by either party. The plaintiff maintained at the trial that though the stipulation reciprocally to execute the bonds mentioned was mutually waived by the parties, all the

services performed by the defendant, and for the value of which he sought to recover, were rendered to the United States Oil & Mining Company pursuant to the terms of their written contract. This statement was denied by the defendant, who contended that the written contract was abandoned and that all the labor performed and property furnished were done and supplied for the plaintiff in accordance with the terms of a subsequent oral agreement.

The defendant as a witness in his own behalf, having testified in support of the averments of his first counterclaim, was interrogated in respect to the allegations of his second separate defense as follows:

"Now in addition to the narrow gauge road that you have testified about, did you build any other railroad or do any other railroad work?"

1. The plaintiff's counsel objected to the inquiry and also to the admission of any testimony to substantiate the various counterclaims on the ground that the several averments in the separate defenses, to wit, "No part of which has ever been paid except as hereinafter alleged," were insufficient to authorize a recovery. The statute regulating the sufficiency of an answer, after declaring the necessity of controverting each material allegation of a complaint, contains clauses authorizing the averments of facts in avoidance of plaintiff's cause of action as follows:

"A statement of any new matter constituting a defense or counterclaim, in ordinary and concise language, without repetition." Section 73, L. O. L.

"The defendant may set forth by answer as many defenses and counterclaims as he may have. They shall each be separately stated, and refer to the cause of action which they are intended to answer, in such manner that they may be intelligibly distinguished." Section 74, L. O. L.

The general rule is that a separate defense should be complete within itself and contain all the averments

necessary to answer the entire cause of action set forth in the complaint or such part thereof as is intended to be controverted. *Gardner* v. *McWilliams,* 42 Or. 14 (69 Pac. 915) ; *Moore* v. *Halliday,* 43 Or. 243 (72 Pac. 801: 99 Am. St. Rep. 724). In the construction of pleadings as in the interpreting of other writings, the maxim, "That is certain which can be rendered certain," applies, and where one part of an answer, for the purpose of avoiding reiteration of facts alike applicable to the other parts of the defense, refers to such part where the matter to which attention is thus attracted is sufficiently set forth, the allusion is a compliance with the requirements of the statute that the language employed in an answer shall be concise and without repetition. 1 Enc. Pl. & Pr. 853; *Sutherland* v. *Phelps,* 22 Ill. 91.

The several defenses herein admit the payments which it is averred the plaintiff made on account thereof, and also set forth in some instances the remainders which the sums asserted to be due on other counterclaims make an aggregate, appearing in the tenth paragraph of the answer to which each separate defense particularly refers. The averments of the answer were sufficient to permit the testimony so objected to to be admitted. We have not overlooked the case of *Davenport* v. *Dose,* 40 Or. 336 (67 Pac. 112), in which the answer, after denying the material allegations of the complaint, "except as hereinafter stated," set up a counterclaim as a separate defense. An application for nonsuit for insufficiency of evidence having been allowed, it was held that the motion was not an admission that the counterclaim alleged was without merit. No question was suggested in that case as to any insufficiency of the answer in the respect insisted upon in the case at bar.

2. The defendant having testified in conformity with the allegations of his eighth counterclaim, and particularly in reference to the sum of $9,000 agreed to have

been paid for a part of the property which was put into a fund by the persons who, by subscription therefor, became members of the corporate body, was asked, "Did you ever receive any stock?" and he replied, "I never saw it." The plaintiff's counsel thereupon moved to strike out the answer on the ground that the promissory notes sued upon, and the sum so agreed to be paid for the stock, having been renewed April 29, 1905, the amount then ascertained to be due could not be controverted by the defendant.

The giving of a promissory note raises a disputable presumption that all antecedent demands between the parties, not embraced in any writing, were included in the settlement which was consummated by the execution of the note. *Williams* v. *Culver*, 30 Or. 375 (48 Pac. 365). This principle is usually invoked as evidence by the maker of a promissory note at a trial when sued by the original payee on an account existing between them before the note was executed. The presumption referred to has no application to a promissory note, any part of which is illegal or without consideration. Thus if the giving of a note was induced by fraud, or there was a failure or want of consideration, all subsequent renewals of the written promise to pay at a stated time a specified sum of money are open to the same defense. *Adams* v. *Ashman*, 203 Pa. 536 (53 Atl. 375). A contrary rule would impose excessive burdens on the maker of a promissory note which had been renewed in compliance with the importunities and threats of an exacting payee. The answer of the witness was properly allowed to remain in evidence.

3. The deposition of E. G. Wilson having been offered in evidence, the defendant's counsel objected to an inquiry in the sworn statement which referred to the written agreement, to wit, "Did the defendant comply with all the terms and conditions of said contract?"

A motion was also made to strike out the answer to the question on the ground that it was not responsive to any controversy involved in the pleadings. The objection was sustained and the motion allowed, and it is maintained that errors were thereby committed. It will be remembered that this action is for the recovery of money alleged to be due on promissory notes. The complaint is in the usual form of actions of that kind. The making of a verbal agreement whereby the defendant asserts that he constructed the railroad and performed other services is set forth in the answer. The new matter thus averred is denied by the plaintiff whose reply contains statements of other facts as hereinbefore in substance detailed. No reference is made in the pleadings of either party to the written contract. The rule is universal that the evidence received at the trial of a cause must correspond with the issues made by the pleadings. Some testimony relating to the written agreement was received without complaint, but, when objection was made to the want of an issue in this respect, the court properly excluded the answer to the inquiry.

4. The plaintiff having testified that the narrow gauge railroad was built by the defendant for his own use, pursuant to the terms of the written agreement, that none of the services or demands set forth in the several counterclaims was performed for or incurred by the witness, and that he never promised or agreed to pay any sum therefor, he was directed by his counsel as follows:

"You may state whether or not, if you know, the United States Oil & Mining Company paid the defendant for the coal hauled, mentioned in the defendant's third further and separate answer."

An objection to the command on the ground that it called for the conclusion of the witness having been sustained, an exception was allowed, and it is maintained

that in refusing to permit the witness to answer as ordered an error was committed. Assuming, without deciding, that the objection should have been predicated on the ground that the command did not relate to any issue in the case whereby the answer would have been immaterial, and that since the proper reason was not assigned a misapprehension of the rules of evidence resulted, it must be conceded that if any error was committed it was subsequently cured, for on the next page of the bill of exceptions the plaintiff, without objection, stated upon oath:

"Neither the United States Oil & Mining Company nor the Diamond Coal Company nor the Denver, Wichita & Memphis Railway Company owes the defendant a cent."

5. The plaintiff was also asked by his counsel:

"Who, if you know, owned the narrow gauge railroad that was mentioned in the defendant's answer under the name of Denver, Wichita & Memphis Railroad, between the 1st of December, 1904, and the 15th day of August, 1905?"

An objection to this question on the ground, *inter alia,* that it was incompetent, irrelevant, and immaterial was sustained and an exception allowed. The question did not relate to any dispute involved in the pleadings, and the court properly declined to permit the inquiry to be answered.

In referring to the narrow gauge railroad and its equipment, and also alluding to the defendant, the plaintiff was further asked on direct examination, "Did you take possession of it under a written contract executed by him?" An objection to the inquiry on the ground, *inter alia,* that it was incompetent, irrelevant, and immaterial having been sustained, an exception was saved. The information sought to be elicited by the question was to the effect that, in order to secure the payment of the notes sued on, the defendant executed to the plaintiff

a chattel mortgage of the railroad, cars, engines, etc., and that, upon a breach of the terms of such conditional sale, possession of the property was taken. At the time the objection last referred to was made, no issue existed in respect to a chattel mortgage. Thereafter, however, plaintiff's counsel obtained leave to amend the reply so as to allege such facts, and was then permitted to introduce testimony on that subject. Such evidence was not admissible when the objection was interposed.

6, 7. It is insisted that in permitting the introduction in evidence, over objection and exception, of certain parts of the laws of Arkansas, applicable to Indian Territory, relating to the prescribed rate of interest and to contracts affected by usury, errors were committed. The question to be considered by this assignment is whether or not the order of the court permitting the reply to be amended so as to aver that pursuant to the terms of a chattel mortgage, the plaintiff upon default therein took possession of the narrow gauge railroad and other property which he sold rendered such evidence admissible, when no alteration by interlineation or substitution was made in the reply. Judicial notice of the public and private acts of the legislative departments of Oregon and of the United States will be taken by the courts of this State. Section 729, subd. 3, L. O. L. Where a court will of its own motion and without the production of any evidence upon the subject recognize the binding force of enactments, it is unnecessary to allege the existence of such laws. *State ex rel.* v. *Stevens,* 29 Or. 464 (44 Pac. 898). Judicial notice of the laws of another State will not be assumed. *State* v. *Moy Looke,* 7 Or. 54. For that reason it is essential for a party relying upon the statute of another State to plead the enactment and to allege such facts as will bring his case within the provisions of the law invoked. *Balfour* v. *Davis,* 14 Or. 47 (12 Pac. 89); *Long* v. *Dufur,* 58 Or. 162 (113 Pac. 59).

This rule, however, can have no application to a party who has never had an opportunity to plead such statute.

8, 9. The principle obtains that permission to amend a pleading does not usually amount to an alteration of a party's formal allegations of his cause of action or the averments of his defense, but where an order has been made granting leave to amend, and the subsequent proceedings in the cause are predicated on the supposition that the change has actually been made, it is proper to treat the order as equivalent to amendment itself. 1 Enc. Pl. & Pr., 641, note 1. The exception to the general rule is particularly applicable to a party who has been permitted to amend his pleading so as to allow the introduction of important evidence, although he has not in fact made any alteration or additional averments to his original formal allegations. Treating the amendment of the reply as having in fact been made in conformity with the plaintiff's request, the allegations of such new matter were deemed to be controverted by the adverse party as upon a direct denial or avoidance. Section 95, L. O. L. The defendant had no efficient cause to anticipate an amendment of the reply relating to a chattel mortgage of property in Indian Territory, and for that reason the law upon the subject applicable to that territory became material and admissible in evidence without alleging in the answer the enactments relied upon or averring such facts as brought his case within the provisions of the law.

10. It is argued that the provisions of the Arkansas law referred to were enactments in effect in that State in 1904, while the laws thereof in force in 1883 were by the act of Congress made applicable to Indian Territory, and that it did not appear that the parts of the law complained of were the same as those of 1883, and hence an error was committed in receiving such enactments in evidence. The Act of Congress of May 2, 1890,

c. 182, § 31 (26 Stat. 94), made the general laws of
Arkansas in force at the close of the general assembly of
that State of 1883, as published in 1884 in the volume
known as Mansfield's Digest of the statutes of Arkansas,
which were not locally inapplicable or in conflict with any
acts of Congress, were extended over and put in force
in Indian Territory, and relating *inter alia* to promis-
sory notes, money, and interest, and to mortgages. 3 Fed.
Stat. Ann. 406. The laws of Arkansas received in evi-
dence consisted of a clause of the organic act of that
State which, as far as material herein, reads as follows:
"All contracts for a greater rate of interest than 10 per
cent per annum shall be void as to principal and interest,
and the general assembly shall prohibit the same by law"
(Const. Ark. Article 19, Section 13)—and parts of the
statute, to wit:

"The parties to any contract * * may agree in writing
for the payment of interest, not exceeding 10 per cent
per annum on money due or to become due." Section
5380.

"No person or corporation shall, directly or indirectly,
take or receive in money, goods, things in action, or any
other valuable thing, any greater sum or value for the
loan or forbearance of money, or goods, things in action,
or any other valuable thing, than in Section 5380 pre-
scribed." Section 5381.

"All contracts or securities whatever, whereupon or
whereby there shall be reserved, taken or secured, or
agreed to be taken or reserved, any greater sum or greater
value for the loan or forbearance of any money, goods,
things in action, or any other valuable thing than is pre-
scribed in this act, shall be void." Section 5390.

The objections urged against the admission of such
parts of the law are based upon the ground that the evi-
dence offered was incompetent, irrelevant, and imma-
terial; that it did not appear that the book containing
such provisions of the laws was commonly admitted in
the courts of Arkansas; and that the volume mentioned

only purported to govern the trial of civil actions in Indian Territory. The only error thus assigned that can have any application to the legal principle now invoked is that the evidence complained of trenched upon the objection first noted. The parts of the law of Arkansas received in evidence were rendered competent by plaintiff's application to amend the reply and the court's order granting the request as in the particulars hereinbefore specified. Whether or not the clauses so admitted were the same as those in force in 1883 is a question that does not appear to have been called to the attention of the court. Where a species of evidence is generally material under the issues involved, an objection on the ground of incompetency or irrelevancy ought particularly to point out the reason assigned therefor, so that the trial court might have an opportunity to pass upon the question, and that its action thereon, if assigned as error, might be reviewed on appeal. The objection now insisted upon was insufficient in the particulars noted and no error was committed as alleged.

11, 12. In one of the instructions the court told the jury, in effect, that if they should determine that under a verbal agreement it was stipulated that the defendant was to deliver possession of the railroad, equipment, etc., to the plaintiff who engaged to credit the cost thereof upon the notes in question, and they should further find that pursuant to such agreement the plaintiff received the property or a part thereof, the defendant was entitled to have credited upon the notes the value of the property so obtained; or if they should discover that such an agreement was effected, and also find that the plaintiff took possession of the property wrongfully, the seizure under such circumstances was equivalent to a delivery under the terms of the agreement, thereby entitling the defendant to have the value of the property so secured credited upon the notes. In another instruction the court

said, in substance:  If, however, you should find that no verbal agreement was entered into, but that the plaintiff wrongfully took possession of the property and converted it to his own use, the defendant would not, under such circumstances, be entitled to any credit therefor on the notes, for he cannot recover under his counterclaims unless you find that the agreement referred to was consummated.   The jury were further instructed to the effect that, under the law applicable to Indian Territory in force during the year 1905, any contract whereby a rate of interest in excess of 10 per cent per annum should be secured was void, and if they found from the evidence a greater rate than thus limited was charged on the notes· in question, on the indebtedness evidenced thereby, the mortgage given to secure such obligations was void, and the taking of the property thereunder unlawful, and such seizure was equivalent to a delivery and acceptance under the agreement to purchase the road, equipment, etc., if they should find such an agreement was made. Exceptions having been taken to these parts of the charge, it is contended that errors were committed in giving them.   It is argued that, though the counterclaims were based upon an averment of the defendant's turning over the property to the plaintiff pursuant to an alleged agreement, the court sanctioned a recovery on the ground of an unlawful seizure of the railroad, etc.

The first separate defense did not arise out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's demand, nor was it founded on any other express or implied contract, and for these reasons the real transaction could not have been put forward as a counterclaim.   Section 74, subds. 2, 3, L. O. L.   If in securing the promissory notes described in the complaint any fraud had been practiced on the defendant, he could by answer to that pleading have set forth the facts constituting the deceit and recouped the

damages which he sustained, because the defense sup-
posed arose out of the contract or transaction which
formed the basis of the plaintiff's action at law. *Scheif-*
*felin* v. *Whetherred*, 19 Or. 172 (23 Pac. 898) ; *Foss* v.
*Newbury*, 20 Or. 257 (25 Pac. 669). In the case at bar
no fraud in obtaining the promissory notes is alleged in
the answer, and, if the taking of the property referred
to was tantamount to an unauthorized assumption and
exercise of ownership over the railroad and equipment
belonging to the defendant, he was not wholly remedi-
less when an action was brought on the notes. The first
counterclaim is predicated upon the assumption that the
taking of the property amounted to a conversion for
which trover, replevin, or trespass would lie, whereby
the defendant could waive the tort, treat the plaintiff as
his agent who upon the sale of the railroad, equipment,
etc., and the receipt of the consideration therefor, might
ratify such acts thereby rendering him liable in assumpsit
for the money or its equivalent that had been received
to the defendant's use. Cooley, Torts, 91. The principle
thus announced is known as the English doctrine which
probably prevails in the greater part of the United
States. A more liberal rule, however, has been adopted
in many of the States where, the conversion having been
waived, the wrongdoer can be sued as for property sold
and delivered, whether or not he has disposed of it, and
the value of which may be recovered in an action insti-
tuted for that purpose. 7 Pl. & Pr. 369. The legal
principle last asserted is not founded upon the precept
of ratification, and if property has been sold by the tort-
feasor for less than its value, unless the owner with full
knowledge of the facts relating to the entire transaction
accepts the proceeds or a part thereof, he does not, by
waiving the tort and bringing an action for the value
of the goods, confirm the act, and is not bound by the
conduct of the wrongdoer, except so far as mere con-

version is concerned. The averments of the first separate defense were evidently intended by defendant's counsel and treated by the court as conforming to the more liberal rule referred to—a rule which is believed to be more consonant with reason and more compatible with justice than the English doctrine and should be controlling in the case at bar. One part of the charge wherein the jury were told that the defendant could not recover on his counterclaims unless they should find that an agreement had been entered into, whereby the value of the property taken was to have been credited on the promissory notes, seems to disregard the principle that the tort could have been waived and the worth of the railroad, equipment, etc., applied as indicated. But, however this may be, the plaintiff was not prejudiced by the use of the language employed. The averments of the first separate defense were sufficient to authorize the giving of the instruction complained of.

13. The court further told the jury in effect that, under the laws applicable to Indian Territory and in force during the year 1905, any contract whereby a rate of interest in excess of 10 per cent per annum should be secured was void, and, if they should find that a greater rate of interest than thus limited was charged on the notes or on the indebtedness thus evidenced, any mortgage given to secure such obligations was void, and the taking thereunder of the property was unlawful and equivalent to a delivery to, and an acceptance by, the plaintiff under the agreement, if they should find that such an agreement was effected. An exception to this part of the charge having been taken, it is contended that an error was thereby committed. It is argued that the notes and chattel mortgage given to secure their payment were governed by the laws of Missouri, which enactments provide that, as a defense in civil actions in the courts of that State, usury may be pleaded, and upon

proof of that fact all sums of money in excess of eight per cent per annum shall be deemed payment and credited upon the principal debt, and the contract, being otherwise efficacious in the State where it was made, was valid in Indian Territory where it was enforced. In support of the legal principle thus asserted, attention is called to the decisions rendered by the Supreme Court of Arkansas in construing the statute of that State with respect to the rate of interest upon notes given in other states, in which determination it was held that a contract, being supportable by law where it was made, was valid in Arkansas, and that such decisions govern an interpretation of the law applicable to Indian Territory. Thus in *Mathews* v. *Paine,* 14 S. W. 463, in an action on promissory notes bearing 10 per cent interest per annum and executed in Tennessee, the answer alleged that the notes in question were given in renewal of other notes on which 12 per cent interest per annum was exacted in contravention of the laws of the State where the contract was made. It was ruled that whether or not the notes were usurious would be determined by the laws of Tennessee where they were made and to be performed, and that under the statute of that State, allowing the recovery of usury, it could not be recouped in a suit on the principal debt.

In *Bank of Harrison* v. *Gibson,* 60 Ark. 269 (30 S. W. 39), it was determined that the law as to the rate of interest where the contract was made would govern as to the validity of a charge of a commission for procuring a loan. So, too, in *Crebbin* v. *Deloney,* 70 Ark. 493 (69 S. W. 312), it was also concluded that on a note payable in Missouri and secured by lands in Arkansas the laws of the former State would govern the interpretation of the contract. It is asserted that these decisions are controlling and show that the instruction last referred to is not a correct statement of the law upon the subject. It

was admitted that the notes sued on herein were payable in Missouri, and that the laws of that State, with respect to the rate of interest and to contracts affected by usury, is correctly stated hereinbefore. If, therefore, the evidence in the case at bar had disclosed that the chattel mortgage had been given in Missouri, the decisions referred to would undoubtedly govern in the determination of this cause. The bill of exceptions fails to show where or when the chattel mortgage was executed. It will be remembered that the reply avers that during the years 1904 and 1905 the defendant was an inhabitant of Missouri and of Indian Territory. He could not have been domiciled in both places at the same time. "As a general rule, personal property," says a text-writer, "is governed by the law of the domicile of the owner, and not by the law of the situs of the property; but a transfer of such property by way of mortgage is an exception to the rule, and the *lex situs* and not the *lex domicilii* governs chattel mortgages." Jones, Chat. Mort. (5 ed.) § 305. In the succeeding section of the work adverted to, the noted author further remarks:

"A mortgage is presumed to have been executed in the State where it is sought to be enforced, until the contrary appears. But there can be no such presumption when the mortgage purports to be executed in another State."

The evidence shows that the chattel mortgage was enforced in Indian Territory and it does not appear where the conditional sale was executed. It will be presumed, therefore, that it was given in that territory, and hence is governed by the laws applicable thereto. No error was committed in giving the instruction last referred to.

14. The court further charged the jury as follows:

"If you find from the evidence that the defendant was entitled to any credits or offsets against the notes sued upon in this action, then you are instructed that said

offsets or credits became due and payable, and should in that event be so construed by you."

An exception having been taken to this part of the language so employed, it is maintained that an error was committed in the use thereof. It is argued that the plaintiff was entitled to ·the amount of his notes at the time the judgment was given, and that, if the defendant was awarded any sum on account of his counterclaims, no interest thereon was recoverable until the sum so found to be due him was determined by verdict of the jury.

The rule is quite general that, in the absence of an express contract to the contrary, mutual debts do not extinguish each other *per se,* and that no interest can be collected upon an unliquidated demand, when controverted in a suit or action, until the sum due has been determined by decree or judgment. *Raski* v. *Wise,* 56 Or. 72 (107 Pac. 984). In that case the prior decisions of this court upon the subject are collected. This rule, like many others, has its exceptions, and if the jury believed from the evidence received that the averments of the answer were substantiated, to the effect that the parties expressly agreed to credit on the promissory notes the sums set forth in the several counterclaims as ascertained and matured at the time the services, etc., are alleged to have been rendered, the result would be the same as though money had been paid, with directions to indorse the sum so given in the manner indicated, but by mistake or otherwise it had not been done. In an action on the notes, if the payment could be established under the circumstances supposed, the sum thus received would be credited as of the time it was paid. *Seitzinger, Ex'r,* v. *Alspach* (Pa.), 4 Atl. 203; *Post* v. *Carmalt,* 2 Watts & S. (Pa.), 70 (37 Am. Dec. 484). No error was committed as alleged.

15. The jury were also told in substance that if they should find that the defendant was entitled to any credits

on the notes, and further concluded that his counter-claims arose in Indian Territory and were payable there-in, then the statute of limitations of Missouri, as alleged in the reply, had no application to the case, but that such credits, if any, were governed by the statute on that subject of such territory, and that, since such enactment had not been pleaded, they should consider the statute of limitations last referred to the same as that of Ore-gon, or a period of six years, and that, if they so found, the credits asserted to be due were not barred when this action was commenced. It is maintained that the lan-guage so used was erroneous and violative of an excep-tion taken thereto. It will be seen that his instruction proceeds upon the theory that, if the jury should find that the parties had not expressly agreed that the mutual credits should be self-extinguishing, then the defendant would be charged with interest on the promissory notes from the time they matured until the judgment was given, and not be entitled to any interest on his counter-claims until the sums due thereon had been ascertained and determined in the same manner; and, such being the case, the provisions of a statute of limitations of this State governed the recovery. The only question to be considered with respect to the instruction last complained of is whether or not, in the absence of any averment or proof on the subject, it will be presumed that the stat-ute of limitations of Arkansas, which was applicable to Indian Territory, is the same as that of Oregon in rela-tion thereto. This inquiry has been settled by repeated adjudication in this State supporting such deduction, and thus showing that no error was committed as al-leged. *Goodwin* v. *Morris,* 9 Or. 322; *Cressey* v. *Tatom,* 9 Or. 541; *Scott* v. *Ford,* 52 Or. 288 (97 Pac. 99) ; *Young* v. *Young,* 53 Or. 365 (100 Pac. 656) ; *De Vall* v. *De Vall,* 57 Or. 128 (109 Pac. 755: 110 Pac. 705) ; *Long* v. *Dufur,* 58 Or. 162 (113 Pac. 59).

16. It is maintained that errors were committed in refusing to give requested instructions to the effect that in the written contract referred to a clause was inserted providing that no changes could be made therein except by the written assent of the parties; and, this being so, the burden was imposed on the defendant to show that a writing was executed modifying or abrogating that agreement, and that, if the services set forth in the counterclaims were performed for others, the plaintiff would not have been liable therefor unless he had promised in writing to answer for such debts or defaults.

The defendant testified that, having entered into an oral agreement with the plaintiff to do the specified work, the latter thereafter wanted him to sign a written agreement, giving as reference the name of a bank cashier who informed the witness that plaintiff was very wealthy and personally responsible for any contract that he might make; that at plaintiff's request and for his convenience the defendant charged the Diamond Coal Company and other corporations for the services performed, and rendered a statement of the account, and charged the same to Mr. Casner, who made part payments thereon; that the written contract was never fulfilled in that there was a failure to execute the required bonds; that the witness ascertained there was such a corporation as the United States Oil & Mining Company, but it had no assets, and, having learned that fact, the plaintiff in a conference with the defendant about the matter said:

"That we would not consider the contract further, but go ahead with a verbal contract, and he would be responsible for all amounts for excavating, hauling coal, etc., and not consider the United States Oil & Mining Company further than doing business in the name of the United States Oil & Mining Company and the Diamond Coal Company."

This witness further said:

"My contracts with Mr. Casner were verbal. I had all my business transactions with Mr. Casner and no one else."

He also said:

"We did all our work under a verbal agreement with Mr. Casner."

These sworn declarations were denied by the plaintiff who testified generally that none of the work was performed by the defendant for him or at his request, nor did he promise to pay therefor or for any part thereof.

Based on this conflicting evidence the court, after explaining the issue respecting the written and the alleged oral contracts, told the jury, in effect, that if the original credit was extended to the plaintiff to whom the defendant looked for payment, and the charges for such services were made to the corporations at the plaintiff's request and for his convenience, and if they found this fact was established by a preponderance of the evidence, then the book entries made in accordance with such solicitation were immaterial. The instructions last referred to fairly present the matters embraced in the requests in denying which no error was committed.

17. It is contended that the verdict was returned May 3, 1911, but that the judgment was not rendered until the following day, and hence an error was committed. When upon a question of fact a judgment is rendered, it must be entered the day it is given. Section 201, L. O. L. This clause of the statute was probably designed to create a lien as soon as possible after a verdict is rendered, but whether the provision is mandatory or ministerial is not deemed to be important, for the term "within the day" evidently means within 24 hours, otherwise a verdict returned just before midnight would be ineffectual unless a judgment could be entered thereon before the close of the last moment of that day. Such a rule would be a travesty on justice. It does not appear that the judgment herein was not rendered within the time limited.

Other errors are assigned, but, deeming them unimportant, the judgment should be affirmed, and it is so ordered.                                      AFFIRMED.

Decided February 25, 1913.

## ON PETITION FOR REHEARING.

(130 Pac. 55.)

MR. JUSTICE MOORE delivered the opinion of the court.

In a petition for a rehearing it is maintained that the judgment in the case at bar was affirmed on the ground that the plaintiff had charged usurious interest on the promissory notes sued on, and that in reaching such conclusion this court overlooked the averments of the answer and the defendant's testimony respecting the alleged unlawful rate of interest. This action is based on three promissory notes for $10,000 each and one note for $1,750, executed April 29, 1905, the smaller note payable in 90 days and the larger notes August 1st of that year, with interest on each from maturity until liquidated at the rate of eight per cent per annum. The answer, in stating the items forming the consideration of these notes, alleged in substance that prior to April 29, 1905, the plaintiff had loaned the defendant money, evidenced by promissory notes that had been frequently renewed and on that day amounted to $19,000; that other sums of money had also been so loaned prior to April 29, 1905, for which no notes were given and on that day equaled $2,049.43; that the defendant had given the plaintiff, for capital stock in a corporation, a promissory note for $9,000, aggregating $30,049.43; that the interest in advance was computed on the latter sum from April 29, 1905, when the notes were executed, to August 1st of that year, when they matured, at the rate of one per cent a month, to wit, $985.87, and added to the principal.

18. The reply denied these averments and alleged that, instead of loaning $19,000 to the defendant, the plaintiff had advanced to him $19,714.70. At the trial defendant's counsel admitted that such sum should have been $19,714.70 as set forth in the reply, and thereupon

obtained leave to amend the answer so as to correct the mistake in this respect; but no alteration in that pleading was made. The cause was tried, however, as though the amendment was actually made, and, such being the case, the order permitting the alteration will be treated as an amendment. 1 Enc. Pl. & Pr. 641, note 1. Correcting the answer filed by adding $714.70 to $19,000, and including the items loaned and the interest stated, it will be seen that the result exactly coincides with the sum of the several promissory notes sued on, thus evidently disclosing an inadvertent mistake in the defendant's pleading. By computing the interest in advance on $30,764.13, the corrected sum, at one per cent per month for 94 days, the actual time from April 29th to August 1st, it will be found to be $963.88, instead of $985.85, as alleged in the answer, a difference of $21.97.

19. The defendant, referring to the material part of his answer, as hereinbefore set forth, testified as follows:

"I paid interest at the rate of one per cent per month; the computed interest amounting to $2,224.12. None of this interest has ever been repaid to me or credited upon the notes."

H. H. Hopkins, who during the years 1904 and 1905 was the defendant's bookkeeper, corroborated Hoskins' testimony as last hereinbefore quoted and made the following statement upon oath:

"That the interest upon the notes sued on in this action was added to the principal up to the time of the maturity thereof and figured at the rate of one per cent per month."

In the deposition of E. G. Wilson, who in the years 1904 and 1905 was the president of the United States Oil & Mining Company, and also secretary of the Denver, Wichita & Memphis Railway, corporations engaged in

business at Catoosa, Indian Territory, the following interrogatory appears:

"State, if you know, whether plaintiff ever charged the defendant interest at the rate of one per cent per month on moneys owing from defendant to plaintiff on or before the 29th day of April, 1905, or at any other time."

The response was:

"To this inquiry I answer, 'No,' for the reason that I had these notes in my hands for collection and talked with Mr. Hoskins frequently about them, and he made no mention of any excess charge, or any charge with which he was dissatisfied, or any charge other than shown by the notes and mortgages."

The foregoing comprises the substance of the allegations of the answer, respecting the consideration for the promissory notes in question, and the entire testimony found in the bill of exceptions as to the rate of interest which the plaintiff charged the defendant on account of money loaned or for sales of property or choses in action.

A substantial issue was made with regard to the alleged usurious rate of interest, and if it be assumed that Wilson's answer as quoted was the statement of a probative fact and not an inference based upon other facts, so that a conflict in the evidence was thus created, there was sufficient testimony received from which the jury could undoubtedly have reached the conclusion that usurious interest was charged by the plaintiff as they were instructed. Any statement to that effect that may be found in the former opinion in this cause was made after considering the pleadings and the testimony now set forth, and the conclusion there reached has not been changed by a careful re-examination of the question.

It is contended that in determining, in the absence of any testimony on the subject, that the chattel mortgage in question was governed by the law of Arkansas as applied to Indian Territory, while the notes sued on

were subject to the laws of Missouri, an error was committed. The defendant, referring to such matters, testified as follows:

"All the transactions set forth as counterclaims in defendant's answer and the business connected therewith in reference to the Denver, Wichita & Memphis Railroad took place in the Indian Territory and were Indian Territory transactions."

20. Each of the promissory notes described in the complaint purported to be dated at Kansas City, Missouri, and is expressly made payable at that place. In the absence of any evidence to the contrary, it will be presumed that a promissory note was executed where it pretends to be dated; but this deduction is overcome by evidence showing that the instrument was given at a different place. 4 Am. & Eng. Enc. Law (2 ed.), 129; *Parks* v. *Evans,* 5 Houst. (Del.), 576; *Plahto's Adm'r* v. *Patchin,* 26 Mo. 389; *Hopkins* v. *Miller,* 17 N. J. Law, 185. In each of the four causes of action set forth in the complaint it was alleged that the promissory note there referred to was executed in Missouri. In the third instruction the jury were informed that it was admitted that the notes sued on were made and delivered in Missouri. This declaration by the court must be accepted as a true statement of the evidence received at the trial, though such fact is not disclosed by the meager bill of exceptions herein.

21. In its general charge the court referred to the chattel mortgage given by the defendant to the plaintiff, but did not state to the jury when or where it was made, and, the bill of exceptions containing no evidence on that subject, it will be presumed that the mortgage was given in Indian Territory, where it was undertaken to be enforced and where the property was when it was hypothecated, as intimated in the former opinion. Jones, Chat. Mort. (5 ed.), § 305. The presumption is strength-

ened by the defendant's testimony, hereinbefore quoted, to the effect that all his counterclaims and the business connected therewith arose and occurred in Indian Territory. The defendant, referring to his dealings with the plaintiff, testified as follows:

"I commenced borrowing money and borrowed in various amounts at various times from Mr. Casner between November, 1904, and April 29, 1905, amounting to a total of $19,714.70."

As the defendant during the time thus stated was engaged in business in Indian Territory, it is fairly inferable that the money so obtained was furnished by the plaintiff at that place, and, though the notes may have been executed in Missouri, the contract for the loans was evidently made in Indian Territory.

The evidence referred to presents for consideration the question whether promissory notes given in Indian Territory on property then therein render such hypothecation void under the law applicable to that territory, on account of the usurious interest. If the bill of exceptions had disclosed an application by the defendant for a loan to be made in Missouri accompanied by a stipulation that the promissory notes evidencing the debt should be secured by a chattel mortgage of property then in Indian Territory, the agreement might possibly be construed as a Missouri contract, which, so far as it related to the notes, was not void in that State by reason of the usury, and, these negotiable instruments being valid there, they would be efficacious elsewhere. *Hosford* v. *Nichols*, 1 Paige (N. Y.) 220.

22. The rule is quite general that, a mortgage being only an incident of a debt, the validity of the security, so far as it may be affected by usury, is, in the absence of any enactment to the contrary, governed by the principles of law applicable to personal contracts. *McIlwaine* v. *Ellington*, 111 Fed. 578 (49 C. C. A. 446: 55

L. R. A. 933) ; *Bank* v. *Doherty,* 42 Wash. 317 (84 Pac. 872: 4 L. R. A. [N. S.] 1191: 114 Am. St. Rep. 123) ; *Manhattan Life Ins. Co.* v. *Johnson,* 188 N. Y. 108 (80 N. E. 658: 9 L. R. A. [N. S.] 1142: 11 Ann. Cas. 223) ; *Tenny* v. *Porter,* 61 Ark. 329 (33 S. W. 211). No distinction in this respect exists between real estate and chattel mortgages. *Trower Bros. Co.* v. *Hamilton,* 179 Mo. 205 (77 S. W. 1081) ; *Central National Bank* v. *Cooper,* 85 Mo. App. 383.

The notes sued on having been made payable at Kansas City, Missouri, the place there expressly designated became important only for the purpose of making presentment of the negotiable instruments for payment. An action could have been maintained on the notes in any court of competent jurisdiction in the United States where personal service of process could have been had on the defendant. In the absence of the service indicated, an action could also have been supported in any such court to the extent of the defendant's property if necessary, by the seizure thereof within the territorial jurisdiction and the giving of such notification as the statute demanded, whereupon a judgment of condemnation, in the nature of a proceeding *in rem,* could have been given pursuant to which the property so taken into possession could have been sold and the proceeds arising therefrom applied on the notes. Any proceeding, however, undertaken to foreclose the chattel mortgage, was not transitory, but was required to be had in Indian Territory where the property was being used.

23. At the trial the plaintiff's counsel observed:

"We think the defendant should be required to elect under what law they desire to stand on; whether the laws of Arkansas or the laws of the State of Missouri."

The defendant's counsel replied:

"We stand on the mortgage in the place where the mortgage was given, and we stand on the notes on the place where the notes were given."

The weight of authority supports the rule that, in the absence of any attempt to evade the usury limitations, the law of a State where a contract was consummated governs the enforcement of its terms. Where, however, a contract is expressly or impliedly to be complied with in a place other than that where it was made, the presumed intention of the parties controls the interpretation of their agreement subjecting it to the law of the place of performance. Storey, Conflict Laws (7 ed.), § 280. It is generally conceded that the situs of a debt is not governed by the situs of the security, and that the debt is usually subject to the law of the domicile of the party to whom it is due. 1 Wharton, Conflict Laws (3 ed.), § 368. This legal principle would seem to make the laws of Missouri relating to usury applicable to the chattel mortgage of property in Indian Territory, particularly so when the notes for which the security was intended to be given were expressly made payable at Kansas City, Missouri, the place of the plaintiff's domicile. Whatever the rule may be in this respect, it was attempted in the former opinion to adopt the theory evidently advanced by the parties at the trial with respect to the law of usury as applied to the chattel mortgage. The answer on this branch of the case sets forth the substance of the laws of Missouri on the question of usury. At the trial the plaintiff was permitted to amend his reply so as to aver that possession of the property was taken under the chattel mortgage upon default therein. No alteration, however, was made in that pleading, but the cause appears to have been tried as though the amendment had in fact been made.

24. The defendant never having had an opportunity to plead either the statute of Missouri with respect to a chattel mortgage affected by usury, or to set forth the enactments of Arkansas applicable to Indian Territory in relation to usury or to the effect thereof upon a chattel

mortgage, was entitled to offer in evidence the statutes of these States upon those subjects. The Missouri statute as to the rate of interest provides generally that the parties may agree in writing for the payment of 8 per cent per annum, and that usury may be pleaded as a defense in a civil action in any court in that State, and upon proof that more than the prescribed rate had been exacted the excess shall be credited upon the principal debt. Rev. Stat. Missouri 1909, Sections 7180, 7183. This evidence was admissible under the original averments of the answer. Pursuant to the permission to amend the reply, the defendant's counsel offered in evidence another section (Section 7184) of the Missouri statute, as follows:

"In actions for the enforcements of liens upon personal property pledged or mortgaged to secure indebtedness, or to maintain or to secure possession of property so pledged or mortgaged, or in any other case where the validity of such lien is drawn in question, proof upon the trial that the party holding or claiming to hold any such lien has received or exacted usurious interest for such indebtedness shall render any mortgage or pledge of personal property or any lien whatsoever thereon given to secure such indebtedness, invalid and illegal."

Upon the receipt of this evidence it would seem that the situs of the property was thereupon assumed and treated by court and counsel to govern the place of the enforcement of the contract, thereby making the statute of Arkansas applicable to Indian Territory relating to usury and the effect thereof upon contracts also admissible in evidence.

25. It was not considered in the former opinion, nor is it now believed to be important, under which statute the contract should be interpreted, for by either it was invalid if the jury found that the interest exacted equaled the sum testified to by the defendant and his witnesses. It will be kept in mind that in Missouri,

Sig. 10

where the rate of interest is in excess of that prescribed, and the right to retain the sum exacted is controverted, and that issue is established at the trial, the undue amount is to be credited on the principal debt. This application of the surplus exacted, however, does not validate a mortgage tainted with usury. *Wintergirst* v. *Loan Co.*, 60 Mo. App. 166; *Western Storage & Warehouse Co.* v. *Glasner*, 169 Mo. 38 (68 S. W. 917).

26. In any event, therefore, the chattel mortgage was void, and a seizure of the property under a pretended foreclosure was a wrongful act that rendered the plaintiff liable for the value of the property converted, and because from a sale of the goods and chattels he paid off prior liens on the property is of no consequence, for, being a volunteer, he must suffer the consequences of his intermeddling.

We adhere to the former opinion, and the petition for a rehearing is denied.

AFFIRMED: REHEARING DENIED.