Argued October 18, reversed and suit dismissed December 17, 1918.

## GORSLINE v. GORE.

### (176 Pac. 603.)

**Compromise and Settlement—Giving Note as Prima Facie Evidence.**

1. The giving of a promissory note is *prima facie* evidence of an accounting and settlement by the parties of all demands between them up to the date of the execution of the note.

**Compromise and Settlement—Presumption of Correctness.**

2. The presumption is in favor of the correctness of a settlement of accounts between parties, and that a note given for the balance ascertained expresses the truth, so that the account will be opened only upon clear and satisfactory proof of error or mistake.

**Compromise and Settlement — Reopening Accounts — Error and Mistake—Evidence.**

3. In a suit by a brother to reopen an account between his sister and their deceased father which had been settled by agreement and the sister's note for balance due given, and later paid in full, evidence of errors and mistakes involving duplicate receipts *held* not sufficiently clear and satisfactory.

> [As to compromise and settlement and when enforceable on payment of part of the demand, see notes in 100 Am. St. Rep. 412, 429.]

From Marion: WILLIAM GALLOWAY, Judge.

Department 1.

This is a suit for an accounting brought by D. D. Gorsline as executor of the estate of W. M. Gorsline, deceased, against Jennie A. Gore. W. M. Gorsline and Catherine Gorsline were husband and wife and resided in Marion County, Oregon. D. D. Gorsline, Jennie A. Gore and Mrs. Illedge are children of W. M. and Catherine Gorsline. It may be inferred from the record that Mrs. Smith and Mrs. Beardsley are also the children of W. M. and Catherine Gorsline, although the record contains no unequivocal evidence to that effect. Catherine Gorsline died on October 12, 1912, and her husband, W. M. Gorsline, died on May 15, 1915. Jennie A. Gore has resided in or near Kalama, Wash-

ington, for about 25 years. During the period commencing with November, 1907, and ending with January, 1912, the defendant received moneys from her parents to be invested for them in county warrants and mortgages.

In response to a letter from her father saying, "I am sick. I want you to come," the defendant went from Kalama to her father's home; and on February 7, 1913, probably the next day after her arrival, she had an accounting and settlement with her father. After accounting for the debits and credits it was agreed between the defendant and her father that she was indebted to him for a balance of $826.31; that she gave to her father a promissory note dated February 7, 1913, for the sum of $826.31. Since giving the note the defendant has paid the note in full.

The complaint alleges that moneys, in amounts unknown to the plaintiff, were delivered to the defendant to be loaned for W. M. Gorsline and that the defendant owes the estate a large sum, the exact amount of which is unknown to the plaintiff; and the executor therefore prays for an accounting.

The defendant pleads the accounting and settlement which she had with her father on February 7, 1913, alleges that she gave her note to her father for the balance found to be due for her after such settlement, avers that she has since paid the note in full, and says that she is not now indebted to the estate in any sum whatever.

The reply confesses that an accounting and settlement was made on February 7, 1913, but seeks to avoid the effect of the settlement by alleging that the defendant wrongfully represented that she had received from her parents only the sum of $4,500 when in truth she had received $5,500; that W. M. Gorsline, then being

aged about 84 years and having full confidence in the integrity of his daughter, relied upon her statement "and attempted at said time to have an accounting with her upon said basis, and upon such attempted accounting, an amount was found due him as set forth" in the answer. The decree of the trial court was for the plaintiff and the defendant appealed.

Reversed and Remanded.

For appellant there was a brief over the names of *Mr. M. J. Gore* and *Mr. Oscar Furuset,* with an oral argument by *Mr. Furuset.*

For respondent there was a brief prepared and presented by *Mr. John H. McNary.*

HARRIS, J.—The defendant argues that the reply is a departure from the complaint. We shall assume, however, without deciding, that the pleadings are sufficient to enable the plaintiff to correct any mistakes that may have been made by the defendant and her father in their settlement; and we shall therefore inquire into the merits of the controversy.

1. It must be remembered that the defendant alleges and the plaintiff admits that there was an accounting and settlement and it must also be borne in mind that the defendant alleges and the plaintiff admits that the defendant gave her promissory note for the balance found to be due from her on such settlement. The giving of a promissory note is *prima facie* evidence of an accounting and settlement between the parties of all demands between them up to the time of the execution of the note; and as said in *Hoyt* v. *Clarkson,* 23 Or. 51, 55 (31 Pac. 198):

"When a settlement of accounts has been deliberately made and a note voluntarily given for an ascer-

tained balance, it will not re-examine such accounts and grant relief except on precise allegations of such errors or mistakes, and clear and satisfactory proof of the same. * * The presumption is in favor of the correctness of the settlement, and that the note given for the balance ascertained on such settlement expresses the truth. Hence, the general rule that a settled account will not be opened on mere conflicting evidence."

See, also, *Matasce* v. *Hughes,* 7 Or. 39, 42 (33 Am. Rep. 696); *Williams* v. *Culver,* 30 Or. 375, 377 (48 Pac. 365); *Casner* v. *Hoskins,* 64 Or. 254, 266 (128 Pac. 841, 130 Pac. 55).

2, 3. D. D. Gorsline and Jennie A. Gore were the only persons who testified as witnesses. Besides W. M. Gorsline and Jennie A. Gore, those present throughout the accounting and settlement were D. D. Gorsline and Mrs. Smith and probably Mrs. Beardsley. Mrs. Smith is dead; but there is no evidence explaining why Mrs. Beardsley did not appear and testify as a witness. The debits charged against the defendant amounted to $4,500 as principal and $1,098.96 as interest, the principal and interest aggregating $5,598.96. The credits allowed the defendant consisted of one item of $89.35 and six other items aggregating $2,683.30, making a total of $2,772.65. Striking a balance between the credits and debits the parties agreed that the defendant was indebted to her father in the sum of $2,826.31. W. M. Gorsline had determined to make an advancement of $2,000 to each of his children; and it was agreed in the settlement that the advancement to be made to the defendant should be paid by crediting it on this balance of $2,826.31; thus leaving a net balance of $826.31 owing from the defendant. After agreeing upon this net balance the defendant signed and delivered to her father a promissory note for $826.31, which she afterward paid in full.

The plaintiff contends that the defendant should be · charged with $5,500. The defendant insists that she only received $4,500 from her parents. The plaintiff claims that the defendant should be charged with three one thousand dollar items, while the latter says that she should be charged with only two of such items. A brief statement of what was done in reaching the settlement may afford some aid in our quest of the truth. The defendant had sent receipts to her father for remittances made to her. Among other moneys he had made a remittance of $1,000 for which the defendant had returned a receipt; subsequently he wrote to his daughter saying that he had lost the receipt and requested 'her to forward a duplicate receipt. On March 31, 1910, she signed and forwarded to her father a duplicate receipt which recites that

"some time in Feb. 1910, I received from W. M. Gorsline $1000.00. Said money used thus: 600.00 in a mortgage, given by Geo. Kalahan & Vina his wife to W. M. Gorsline and the ballance put in Co. Warrants drawing 8 per cent int. the original receipt being mislaid or lost this sum being the only money received by me during Feb. 1910."

This duplicate receipt occupies an important place in the controversy between the litigants. The defendant contends that the duplicate receipt represents an item of $1,000 which was received by her on January 27, 1909, and that the date 1910 appearing in the duplicate receipt was simply the result of a mistake on her part. The plaintiff insists that the defendant should be charged with the amount stated in the duplicate receipt in addition to the several amounts represented by the remaining receipts. Nine receipts, including the duplicate, were produced at the trial. The plaintiff says that his father had only eight receipts when the settlement was made on February 7, 1913. At the time of

the settlement D. D. Gorsline "read off" the receipts; W. M. Gorsline calculated the interest with the aid of an interest book; and the defendant set down the items, the principal of each remittance and the interest due on it, on a sheet of paper. The interest was computed to February 1, 1913. A paper marked Exhibit "C" is undoubtedly the paper used by the defendant on that occasion. The defendant swears that it is the identical paper used by her at that time. The plaintiff does not admit that it is the paper used by his sister, although he does say that "it might possibly be one that they made that day," and he concedes that she "set down the figures" as his "father would give them from the interest book." The authenticity of Exhibit "C" is established beyond question by the testimony of the plaintiff himself; for when speaking of a $500 item he said:

"Well, now, I will tell you, I think there was a mistake in the date of that receipt that day. You see, that is October, but no date, and I think they agreed upon a date. I have November 1st."

The receipt itself reads thus: "Kalama, Oct., 1908," and immediately beneath "Oct., 1908," appears "Nov. 1st, 1908," written with an indelible pencil. Exhibit "C" shows that "Oct—08" was first set down; but "Oct." is marked out and "Nov. 1–08" inserted. The whole of Exhibit "C" is written with an indelible pencil. Two other pieces of paper, which were originally used as envelopes, were used in making the calculations. One of these papers is marked Exhibit "D" and the other Exhibit "E."

The plaintiff testified that immediately after the settlement was agreed upon he made a memorandum of the credits and debits, and when referring to his memorandum he said "that's the figures I taken from

theirs that day." The credits and debits shown upon his memorandum correspond exactly with the credits and debits shown upon Exhibits "C," "D" and "E." In the upper left-hand corner of Exhibit "C" appears a column of figures consisting of eight items, making up the principal sum of $4,500 charged against the defendant. These items are as follows:

"Feb. 1st, 1000; Sept. 19–08, 500; Dec. 06–07, 250; Nov. 16–07, 500; Sept. 20–09, 500; Dec. 4–07, 250; Jan. 26–12, 1000; Nov. 1–08, 500."

The interest was calculated on each of these principal items and the interest due on each respective item was set down in the upper right-hand corner of Exhibit "C." The interest aggregated $1,098.96.

The plaintiff testified that he talked with his father "a good many times" about the settlement and that his father "always claimed that there was more money back." It is significant, however, that the plaintiff admits that there was "no private talk; we was all there together" on the day of the settlement; and the plaintiff also admits that his father agreed to the settlement "and took the note." There is no evidence whatever to indicate that W. M. Gorsline ever claimed to the defendant that any moneys had been omitted from the accounting; and she testified that her father never claimed that any item was omitted from the settlement. The plaintiff testified, however, that his father told him, about two months before his death, "that he had found that other receipt of a thousand dollars"; and that about three days before his death when "telling me some business to look after" his father said, "That other receipt that I found; Delmar, you look after that, too." The plaintiff says that the parties had but eight receipts, including the duplicate, on the day of the accounting; that he retained possession of these eight

receipts and that they were not delivered to the defendant; that "quite a bit" after his father's death he "found that there [the ninth receipt] about the house, going through the papers." When asked to pick out from the nine receipts produced at the trial the one his father did not have on the day of the settlement, D. D. Gorsline specified the receipt dated January 26, 1912. This witness emphasized his testimony by saying, "I read the receipts off, and I know that it [the January 26, 1912, receipt] wasn't there." When asked whether his father knew "anything about that receipt at the time this alleged settlement was made," D. D. Gorsline answered: "I don't think he did." Again, when asked: "Are you quite sure it is this one of January 26, 1912, is this one you didn't have?" This witness responded, "No, I know we didn't have that one;" and even after his attention was directed to the fact that among the debits set down in Exhibit "C" is one item dated January 26, 1912, for $1,000, the witness reiterated his former statements and said that he was "quite positive" that the January 26, 1912, receipt was not among the receipts which the parties had on February 7, 1913. Furthermore, D. D. Gorsline admitted, even after his attention had been called to the January 26, 1912, item appearing in Exhibit "C," that in making the settlement the parties took into account the one thousand dollar item represented by the duplicate receipt and that this duplicate receipt had been in his possession "all the time" since the day of the settlement. In other words, the plaintiff is contending that the defendant should be charged with the principal sum of $5,500 on the theory that when the settlement was had on February 7, 1913, the parties did not have the January 26, 1912, receipt, and that therefore this item of $1,000 was not taken into

account by the parties in making their settlement. As we read and analyze the record, the plaintiff is honestly mistaken in his recollection of some of the facts.

Exhibit "C" contains eight items which make up the principal sum of $4,500 and among these eight items is the one for January 26, 1912, for $1,000. The eight items are set down in a column in the upper left-hand corner of Exhibit "C." Interest was computed at the rate of 7 per cent per annum; and written after each of the eight items is the time for which interest was charged and the amount of interest found to be due on each such item. Interest was computed from the dates of the respective receipts, with the exception of the duplicate receipt. Regardless of whether the parties had the January 26, 1912, receipt with them on the day of the settlement, it incontrovertibly appears that this item for $1,000 was included in the settlement. The significance of the appearance of the January 26, 1912, item is especially emphasized when we remind ourselves that the elimination of this item from the account would necessarily and irremediably change the balance which the parties struck; and in this connection we must remember, too, that the memorandum which D. D. Gorsline made of the debits and credits, agrees with the debits and credits shown on Exhibits "C," "D" and "E." Most of the figures on Exhibit "D" were made with an indelible pencil and appear to have been written by the defendant. A few figures on Exhibit "E" were made with an indelible pencil and appear to have been written by the defendant; but the remaining figures on Exhibit "E" were made with an ordinary lead pencil and were written by D. D. Gorsline or by his father, probably the latter.

Among the nine receipts produced at the trial is one for $1,000 under date of January 27, 1909. This item

does not appear in Exhibit "C"; and, moreover, if this item had been included in the accounting with interest computed at the rate of 7 per cent per annum from January 27, 1909, the balance struck by the parties would have been different from that agreed upon by them, whether all or only a portion of the remaining eight receipts entered into the calculations. D. D. Gorsline is probably correct when he says that the parties had only eight receipts on the day of the settlement; but every sign in the record points to the January 27, 1909, receipt as the one that was missing. The defendant claims that the duplicate receipt was intended as a duplicate for the January 27, 1909, receipt; for she contends that she received remittances of $1,000 twice only, the first on January 27, 1909, and the second on January 26, 1912. There are circumstances which tend to weaken this contention and there is evidence which tends to support it. The duplicate receipt was a part of and was inclosed with a letter dated March 31, 1910. The fact that the duplicate receipt fixes February, 1910, as the time when the money was received, especially when considered in connection with the reference to the Kalahan mortgage, which was probably dated March 5, 1910, are circumstances which tend to dispute the claim of the defendant. Her explanation is that she erroneously wrote 1910 instead of 1909 and in so doing made a mistake which, although not a common one, is liable to be made by any person; and she says too that the moneys had been kept invested in county warrants until the loan was made to Kalahan.

The defendant testified as follows:

"Before we started in with the receipts; when we first began the business, I said to my father, I said, 'You remember the duplicate receipt,' I said, 'I don't

want to pay a thousand dollars twice.'   He says, 'I will never make you pay a thousand dollars twice.' ''

In further explanation the defendant stated that their conversation occurred before she had looked at the receipts and before she knew that her father ''had such a duplicate receipt present''; that her father ''said he didn't have it [the original receipt]''; and that ''he said he didn't have the two receipts,'' and ''he said he didn't have the original.''   D. D. Gorsline corroborated the defendant when he testified that:

''There was a conversation there that there might be two receipts out for the same amount of money, but as I read those receipts off she looked at every one of them and acknowledged every receipt before they was figured on.''

All agree that the parties had the duplicate receipt on the day of the settlement; but, for the reasons already stated, our conclusion is that the parties did not have with them the receipt dated January 27, 1909, when they had their accounting and settlement.   If we now direct attention to Exhibit ''C'' we shall there find some evidence corroborating the direct testimony of the defendant.   The first of the eight items making up the principal sum of $4,500 is written thus: ''Feb. 1st, 1000.''   This undoubtedly refers to the duplicate receipt; for all agree that the duplicate receipt was among the eight receipts which the parties considered on the day of the settlement.   Immediately after the item just quoted is the figure ''7,'' signifying that the interest was calculated at the rate of 7 per cent per annum; and immediately after the ''7'' we find written ''3 yrs.,'' indicating that interest is to be computed for a period of three years.   If February, 1910, the date given in the duplicate receipt, is the true date, then the interest period was exactly three years and

the correct amount of interest would have been $210; but we find that the defendant is charged with $240 as interest on the item represented by the duplicate receipt. Neither of the two witnesses was asked to explain about the allowance of $240 as interest on the duplicate receipt, and hence it is not going far afield to infer that, not having the January 27, 1909, receipt with them and not remembering the exact date of the original receipt and at the same time knowing that the defendant had received the money prior to February, 1910, the defendant and her father figured the interest for three years and then added $30 to cover the interest which had accrued during the additional but uncertain period.

If we now apply the rule announced in *Hoyt* v. *Clarkson,* 23 Or. 51, 55 (31 Pac. 198), it is manifest that we are driven to the conclusion that the settlement made by the defendant and her father must remain undisturbed, because the plaintiff has failed to produce "clear and satisfactory proof" of any errors or mistakes. In addition to the circumstances previously narrated it may be of interest to relate that W. M. Gorsline "kept his newspapers and other papers" in a box on the clock shelf. Shortly after the death of W. M. Gorsline, within an hour according to the testimony of the plaintiff and within ten minutes according to the testimony of the defendant, Mrs. Illedge "grabbed up all the papers there was and threw them right in the stove before we could stop her." The defendant testified that "we didn't grab hold of her, for we didn't have time. We told her not to burn them." D. D. Gorsline corroborated the defendant and explained that just as he came into the room he heard the defendant say, "What are you burning them papers for?" Although the evidence does not dis-

close what papers were burned, yet it does appear, without dispute, that Mrs. Illedge burned all the papers, whatever they were, which were in the box. To state the admitted fact of the burning is equivalent to stating the inferences which can be drawn.

It is not without propriety to say, in passing, that on account of the attitude of some of the heirs the executor was obliged to bring this suit in order to shield himself against criticism and for the further purpose of clearing up all doubts about the rights of the estate; and hence it is peculiarly appropriate that the costs and disbursements of this litigation should be charged against the estate.

The decree is reversed and the suit is dismissed.

REVERSED AND DISMISSED.

McBRIDE, C. J., and BENSON and BEAN, JJ., concur.

