TANZER, J.,
specially concurring.
The issue in this case is simple: Does the word "notify” in a statute mean "notify”? The secondary issue, generated by the majority, is not nearly so simple: To what extent may a court construe an *[1070] unambiguous statute in order to achieve a procedural result which it deems more reasonable, i.e., more like that which the court would have legislated than that which is achieved if words of the statute are directly applied.
I respectfully believe that the majority goes too far down the legislative path. The majority analysis is like a two-legged stool, neither leg of which is sufficient to support the weight thrust upon it, and both of which together are insufficient to provide balance, particularly since they point in different directions.
I
The first leg relied upon by the majority is: ORS 484.715, read together with ORS 482.570, means what ORS 482.570 says. This is patently fallacious. If a court looks at an apple together with a pear, the apple does not become a pear. The two remain distinct. Similarily, ORS chapters 482 and 484 are distinct.
ORS 484.715 is part of the Habitual Traffic Offenders Act. The purpose of the Act is to protect the public safety by retraining potentially competent drivers who are convicted of multiple traffic infractions. State v. Wells, 27 Or 537, 556 P2d 727 (1976). Education is its strategy; long-term (10 year) judicial suspension is the enforcement tactic. The notice section of the Act provides simply that prior to initiation of judicial habitual traffic offender proceedings, the Motor Vehicles Division "shall notify” the licensee:
"When the division receives an abstract of the conviction or bail forfeiture, under ORS 484.240, and the conviction or bail forfeiture is the second one of those described by paragraph (a) of subsection (1) of ORS 484.705 for the convicted person, the division immediately shall notify the licensee and offer him an opportunity of an advisory meeting with a representative of the division in the county wherein the licensee resides. At such a meeting, the (¿vision shall advise the licensee of the provisions of ORS 484.700 to 484.750 and of the availability of educational programs for driver improvement.” (Emphasis supplied.)
*[1071] ORS chapter 482 is a much broader body of statute than the Habitual Traffic Offenders Act. Among other things, it deals with administrative suspension and revocation of operator’s and chauffeur’s licenses — a separate, though related, subject from the Habitual Traffic Offenders Act. ORS 482.430 provides for mandatory license revocation for one or more convictions of certain enumerated traffic and and other crimes. ORS 482.450 and 482.520(1) provide for discretionary administrative cancellation for convictions of certain lesser offenses, incompetency, nonqualification or false use of license. ORS 482.540 provides for suspension for refusal under certain conditions to take a breath test for alcohol detection. The duration of suspensions under ORS chapter 482 is generally six months, but can be as long as three years. The notice section, ORS 482.570, provides for actual or constructive notice.[1]
ORS 482.570 does not stand by itself as a procedural entity, although the majority deals with it alone. It operates conjointly with ORS 487.560,[2] which provides *[1072] that in a prosecution for driving while one’s license is suspended or revoked, lack of actual notice is an affirmative defense which is not available if defendant protected himself from mail notice or if the license was suspended in court. The two statutes operate together. It would be illogical to engraft one onto the Habitual Traffic Offenders Act and not the other. Yet it would be equally illogical to hold that a statute providing a restricted affirmative defense to a crime also applied to civil habitual traffic offender proceedings. The point is clear: the two statutes ,go together and neither of them is applicable to the Habitual Traffic Offenders Act.
There is a danger of the majority going too far. Under ORS 486.221 the division must "immediately notify” a licensee of suspension or revocation of a vehicle license or registration. Does the constructive notice provision of ORS 482.570 also regulate notice under ORS 486.221? If not, why not? If so, to which notice statutes in which other chapters of the Motor Vehicle Code does it not apply?
In sum, ORS chapter 484 controls judicial long-term suspension for certain prior convictions and ORS chapter 482 controls substantial but much shorter term administrative suspensions based upon a broad variety of grounds. These separate sets of statutes are sufficiently different in purpose, scope and grant of authority that they give no reason for us to impute to *[1073] one the meaning of the other. Therefore, I cannot agree with the first leg of the majority analysis which states that
"* * * the revocation procedures in ORS ch 482 and the revocation procedures in ORS ch 484 cover the same subject and should be construed together. * * *”
II
The second argument of the majority is equally fallacious:
"* * * This may be a situation where 'the legislature probably never considered our present problem.’ State v. Welch, 264 Or 388, 393-94, 505 P2d 910 (1973). But had the legislature considered the problem, we believe it would have required the same notice procedure under ORS 484.715 as is required under ORS 482.570 and ORS 487.560(3), read together.”
The civil code concept of the court qua legislature where the legislature has not acted is appealing, particularly where interstitial backfilling fails to resolve an issue satisfactorily. This quasi-legislative approach, first articulated in State v. Welch, 264 Or 388, 393-4, 505 P2d 910 (1973), should be resorted to, I believe, with great restraint. Its application should be restricted to instances where we can say with reasonable certainty that there is an actual legislative omission. Such an omission will normally be evidenced by an absence of pertinent statutory language, by ambiguous statutory language, or by legislative history demonstrating an oversight. None of these normal evidences of legislative omission is present here.
There is no absence of pertinent statutory language. ORS 484.715 requires that the division "notify” the licensee. The word is not only present, but it is not ambiguous. We normally give to a word its ordinary meaning and "notify” has one: "to give notice.” In no way can "notify” mean "to mail an intercepted letter.” The word "notify” standing alone does not authorize constructive notification.
*[1074] The majority acknowledges as much, but reads into the word an authorization for constructive notice because, it asserts, the legislature would have done so had it thought of the problem. The legislative history of the two sections, however, leads inescapably to the conclusion that it is far more likely that the legislature considered the problem than that it failed to do so.
ORS 484.715 was enacted in 1973 as a part of the Habitual Traffic Offenders Act.[3] It was considered in the course of passage by the Judiciary Committee of the House of Representatives and both the Transportation and Judiciary Committees of the Senate.[4] The notice provisions of ORS chapter 482 have long been problematical and they have been amended several times, including 1973.[5] The 1973 amendment followed disposition of a series of more substantial proposed amendments. In the course of passage, amendments to ORS 482.570 were considered by the Transportation Committee of the House, but in the Senate the amendments were thrashed out by the same two committees that approved ORS 484.715, Transportation and Judiciary.[6] In view of the heated rites of passage of the notice-of-suspension statute, we cannot fairly infer legislative ignorance of the same issue in a similar statute approved not only by the same session of the legislature, but by majorities of the same two Senate committees. Nor, given the political variety of the members of the legislature and the compromises which are often necessary for passage of traffic legislation, would I concur in the majority's conclusion that
*[1075] There are assuredly reasons for the disparity — and they need not be rational to us — which would have been completely appealing to some legislators whose votes were needed for passage of the acts. It is not for us to squeeze legislation into meanings which we consider to be most rational when the statutory words dictate otherwise.
*[1074] "* * * the statutory scheme suggests no rational way the legislature could have contemplated * * * more notice under ORS 484.715 than under ORS 482.570.”
*[1075] Therefore, I also disagree with the majority’s second theory that the legislature would have authorized constructive notice had it thought of it.
I would hold simply that the requirement of notice requires notice and if the result displeases the legislature it can modify or repeal the requirement, for, as Chief Judge Schwab has written on behalf of the court in the course of applying the plain words of a different statute and reaching a plainly unreasonable result:
"For those who believe a result such as the one reached here is not equitable, the forum in which to seek a different rule is the legislature, not the courts.” Rak v. SAIF, 31 Or App 125, 129, 570 P2d 384 (1977).
Good advice. We should follow it.

ORS 482.570 provides:
"When the division, as authorized or required, suspends, revokes or cancels a license or the right to apply for a license to operate motor vehicles, it shall give notice of such action to the person whose license or right is affected. The notice shall state the nature and reason for the action and, in the case of a suspension, whether it was ordered by a court. Service of the notice is accomplished either by mailing the notice by certified mail addressee only, return receipt requested, to the person’s address as shown by the division records, or, by personal service in the same manner as a summons is served in an action at law.”

ORS 487.560 provides in pertinent part:
"(1) A person commits the crime of driving while suspended if he drives a motor vehicle upon a highway during a period when his license or permit to drive a motor vehicle or his right to apply for a license to drive a motor vehicle in this state has been suspended by a court or by the division or revoked by the division.
"(2) In a prosecution under subsection (1) of this section, it is an affirmative defense that:
* * * *
"(b) The defendant had not received notice of his suspension or revocation as required by ORS 482.570 or in the manner provided in paragraph (c) of subsection (3) of this section.
*[1072] "(3) The affirmative defense under paragraph (b) of subsection (2) of this section shall not be available to the defendant if:
"(a) The defendant refused to sign a receipt for the certified mail containing the notice;
"(b) The notice could not be delivered to the defendant because he had not notified the division of a change in his residence as required by subsection (2) of OHS 482.290; or
"(c) At a previous court appearance, the defendant had been informed by a trial judge that the judge was ordering a suspension of the defendant’s license, permit or right to apply.
"(4) Any of the evidence specified in subsection (3) of this section may be offered in the prosecution’s case in chief.
* * * * »

Oregon Laws 1973, ch 301, § 4.

Senate and House Journal, 382 (1973).

 ORS 482.570 was originally enacted in 1965, Oregon Laws 1965, ch 321, § 2. The notice provisions were amended in 1971 and 1973. Oregon Laws 1971, ch 428, § 1; Oregon Laws 1973, ch 643, § 1.

Senate and House Journal, 202-3 (1973).